MAHONING COUNTY BAR ASSOCIATION *v.* OLIVITO.

[Cite as *Mahoning Cty. Bar Assn. v. Olivito,*
110 Ohio St.3d 64, 2006-Ohio-3564.]

(No. 2005–2030—Submitted February 22, 2006—Decided July 26, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Richard Aaron Olivito of Steubenville, Ohio, Attorney Registration No. 0041242, was admitted to the Ohio bar in 1989.

{¶ 2} On December 6, 2004, relator, the Mahoning County Bar Association, charged respondent with several violations of the Code of Professional Responsibility. Respondent answered the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in July 2005. The panel then prepared findings of fact and conclusions of law, which the board adopted, as well as a recommendation, which the board modified.

### Misconduct

{¶ 3} Sometime in either March or May 2003, Catherine and Michael Accola retained respondent to represent them in a bankruptcy matter and to obtain occupational driving privileges for Mr. Accola. Both respondent and Mrs. Accola testified that the Accolas paid respondent a fee at their first meeting. Respondent characterized this as a flat-fee arrangement, but no written fee agreement was executed. While there is some dispute as to the exact fee, the Accolas did give cash to respondent at the outset, and both parties understood that some further payment would be made.

{¶ 4} Respondent did little, if any, work on the Accola bankruptcy until August 2003. Sometime in August, respondent asked Robyn Wilson, a paralegal employed by the attorney from whom respondent rented office space, to help prepare the Accolas' bankruptcy petition. Wilson worked on the petition for about a month and talked with the Accolas several times to gather information and discuss the petition. Wilson apparently did most of the work on the petition and gave a final draft to respondent sometime after Labor Day.

{¶ 5} Although the bankruptcy petition was completed in early September 2003, respondent did not file the petition until October 17, 2003—either seven months (from March) or five months (from May) after the Accolas retained him. Respondent did not have the Accolas review or sign the completed petition. Instead, respondent forged the Accolas' signatures in three places on the petition. Respondent also falsely represented on the petition that he had received no payment for attorney fees.

{¶ 6} The Accolas' creditors' hearing was scheduled before the bankruptcy trustee on December 15, 2003. Respondent did not appear at the hearing and failed to notify the trustee or the court of his absence in a timely fashion. He also did not communicate with his clients before the hearing.

{¶ 7} The bankruptcy trustee, Elaine Greaves, rescheduled the creditors' hearing for December 29, 2003, but respondent did not communicate with his clients between the first and second hearings. On December 23, 2003, respondent filed a one-page motion to withdraw as counsel. In the motion, respondent once again falsely claimed that the Accolas had not paid him attorney fees, citing as a reason for withdrawal the "[c]omplete failure to pay counsel for his preparation and time in regards to this matter."

{¶ 8} Respondent further claimed that he had sent the motion to the Accolas by ordinary mail on December 19, 2003. Mrs. Accola testified that she never received the motion to withdraw, nor did respondent inform her or her husband before the December 29 creditors' hearing that he was intending to withdraw. Trustee Greaves expressed concern that, factoring in mailing time by regular mail and the intervening holiday, the timing of the motion to withdraw did not give the Accolas sufficient notice of respondent's withdrawal to enable the Accolas to obtain another attorney before the second creditors' hearing.

{¶ 9} Respondent arrived late for the December 29 hearing, and when he appeared, he made several additional misrepresentations to trustee Greaves. He falsely claimed that the Accolas had given him permission to sign their signatures to the petition, that he had provided them with a copy of the petition, and that he had "completely apprised" his clients of its contents. He told the trustee that he had saved the Accolas' home from foreclosure, despite the fact that the Accolas did not own a home. He also claimed that the Accola bankruptcy was very complex and that he had reviewed the petition with a former bankruptcy trustee, neither of which was true.

{¶ 10} Respondent admitted violating DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation) for forging his clients' signatures in the bankruptcy petition. Respondent, however, denied all other alleged violations. Nevertheless, the board found that respondent had additionally violated DR 1–102(A)(5) (barring conduct that is prejudicial to the administra-

tion of justice), 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law), 2–110(A)(2) (requiring a lawyer to take reasonable steps to prevent damage or prejudice to a client before withdrawing from representation), and 6–101(A)(3) (prohibiting the neglect of an entrusted legal matter).

{¶ 11} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 12} As aggravating factors, the board found that although respondent's misconduct affected only two clients in a single matter, there was a pattern of misconduct within that matter. Respondent made a number of false or misleading statements to the bankruptcy court and the panel. Because of respondent's actions, his clients and the bankruptcy court had to suffer through the inconvenience of three separate hearings when this simple bankruptcy could have been accomplished in just one hearing. While respondent participated in the disciplinary process, the panel found that respondent did not engage in "full and free disclosure," nor did he display a cooperative attitude toward the proceedings. Instead, respondent "tended to obfuscate, waste time, attack his own clients and other witnesses, and argue with Relator's counsel. Literally hundreds of pages of the deposition transcripts, submitted by stipulation as evidence, were taken up with Respondent's largely irrelevant, redundant, argumentative and sometimes rude questions and speeches." See BCGD Proc.Reg. 10(B)(1)(c), (d), (e), (f), and (g).

{¶ 13} The mitigating factors identified by the board were the absence of a prior disciplinary violation by respondent and that respondent's misdeeds affected two clients in one matter, rather than a series of clients and matters. Respondent also acknowledged the wrongful nature of his conduct in forging his clients' signatures, although he admitted none of the other violations. The relator also stipulated that the Accolas received a bankruptcy discharge based on the petition filed by respondent, and in that regard, the clients were not harmed. Respondent additionally submitted several letters attesting to his good character and his interest in defending the rights of the poor and the downtrodden. See BCGD Proc.Reg. 10(B)(2)(a) and (e).

{¶ 14} Relator recommended that respondent be suspended for two years. Respondent suggested a public reprimand. The panel recommended that respondent be suspended from the practice of law for one year, with six months stayed. The board concluded that a two-year suspension with one year stayed was warranted for respondent's misconduct. The case is now before us on respondent's objections to the board's recommendation.

Review

{¶ 15} Respondent does not now deny violations of DR 1–102(A)(4), 1–102(A)(5), and 1–102(A)(6). However, he contends that the board erred in concluding that he failed to take reasonable steps before withdrawing to protect his clients' interests in violation of DR 2–110(A)(2) and that he neglected his clients' interests in violation of DR 6–101(A)(3). He also objects to any actual suspension of his law license.

{¶ 16} We have reviewed the board's report and have also considered the written and oral arguments presented by the parties in response to that report. We hold that respondent violated all of the provisions cited in the board's report, and we also agree that the board's recommendation of a two-year suspension with one year stayed is the appropriate sanction.

{¶ 17} Respondent claims that the board erred in finding a violation of DR 6–101(A)(3), and he offers a number of excuses for the delay in filing the Accolas' bankruptcy petition: his clients' lack of cooperation, the complexity of the bankruptcy, and turnover in staff. However, none of respondent's excuses justifies the delay in this matter. The Accolas retained respondent in either March or May 2003. Yet respondent has no time records, calendar, or other documents to prove that he did any work on the Accola bankruptcy until August 2003. Respondent claims that the delay was due in large part to the Accolas' failure to disclose certain records and the complexity of the bankruptcy. But one witness, a bankruptcy attorney, described the Accola bankruptcy as a "simple case." Trustee Greaves also testified it would not take six months to resolve some of the problems and delays that respondent attributed to the Accolas and that, once all the information was received from the clients, preparing the petition would take "a matter of hours or less." In fact, the paralegal who prepared the petition on respondent's behalf was able to obtain the necessary information from the Accolas and prepare the bankruptcy petition within a month's time. Thus, we agree with the panel that respondent inexcusably neglected the Accola bankruptcy over a matter of months.

{¶ 18} Respondent also claims that the board erred in finding a violation of DR 2–110(A)(2). He contends that the Accolas had effectively discharged him when they filed the grievance against him with relator on December 15, 2003. However, Mrs. Accola specifically stated in the grievance that she had not discharged respondent from her case. She also testified that she still considered respondent her attorney when she attended the December 29 creditors' hearing. Moreover, respondent attempted to withdraw as counsel for the Accolas before he had taken reasonable steps to avoid foreseeable prejudice to the rights of his clients, before he had provided notice of withdrawal, and before giving his clients an opportunity

to employ other counsel. Thus, we also hold that respondent did not take proper steps to withdraw as the Accolas' counsel.

{¶ 19} Finally, respondent objects to any suspension of his law license, arguing that his behavior "would merit at best a public reprimand, or a fully stayed suspension." Contrary to respondent's assertion, his conduct here involves egregious wrongdoing beyond the forging of his clients' signatures. Indeed, in addition to forging his clients' signatures to their bankruptcy petition under penalty of perjury, respondent made numerous misrepresentations to the bankruptcy court in an attempt to avoid the consequences of his deceit. Moreover, respondent neglected his clients' case for several months and failed to take proper steps to protect his clients before attempting to withdraw as their counsel.

{¶ 20} In cases involving multiple violations, including acts of fraud or deceit involving signatures on court documents, neglect of clients, conduct prejudicial to the administration of justice, and conduct adversely reflecting on the attorney's fitness to practice, we have imposed an actual suspension. See, e.g., *Disciplinary Counsel v. Shaffer*, 98 Ohio St.3d 342, 2003-Ohio-1008, 785 N.E.2d 429, ¶ 13–14 (one-year suspension with six months stayed on conditions for attorney's course of conduct to defraud relating to forged signatures on power of attorney); *Disciplinary Counsel v. Bandy* (1998), 81 Ohio St.3d 291, 294, 690 N.E.2d 1280 (two-year suspension with 18 months stayed for violations relating to fraudulent signatures on a will); *Lorain Cty. Bar Assn. v. Papcke* (1998), 81 Ohio St.3d 91, 94, 689 N.E.2d 549 (18–month suspension with 12 months stayed for violations relating to notarizing fraudulent signatures). In addition, we have held that when an attorney engages in a course of conduct that violates DR 1–102(A)(4)— as here—the attorney will be actually suspended from the practice of law for an appropriate period of time. *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237, at syllabus.

{¶ 21} We acknowledge that respondent has no prior disciplinary record but disagree with the stipulation that respondent did not act with dishonest or selfish motives in filing the Accolas' bankruptcy petition. Respondent's pattern of misconduct, his many false statements, including those made during the bar investigation and the disciplinary process, his lack of complete cooperation in the disciplinary process, and his apparent lack of understanding of and remorse for his misconduct convince us that the board's recommended sanction in this matter is appropriate. Cf. *Cuyahoga Cty. Bar Assn. v. Jurczenko*, 106 Ohio St.3d 123, 2005-Ohio-4101, 832 N.E.2d 720.

{¶ 22} Accordingly, respondent is hereby suspended from the practice of law for two years with one year stayed, provided that respondent commit no further misconduct during the suspension period. If respondent fails to comply with this

condition, the stay will be lifted, and respondent will serve the full two-year suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Green Haines Sgambati Co., L.P.A., and Ronald E. Slipski; Comstock, Springer & Wilson Co., L.P.A., and David C. Comstock Jr., for relator.

Kravitz, Gatterdam & Brown, L.L.C., Max Kravitz, William Bluth, Paula Brown, and Jacob Cairns, for respondent.