CINCINNATI BAR ASSOCIATION v. LUKEY.

[Cite as *Cincinnati Bar Assn. v. Lukey*, 110 Ohio St.3d 128, 2006-Ohio-3822.]

(No. 2006–0079—Submitted April 11, 2006—Decided August 9, 2006.)

## Per Curiam.

{¶ 1} Respondent, Paul E. Lukey of Cincinnati, Ohio, Attorney Registration No. 0000965, was admitted to the practice of law in Ohio in 1975.

{¶ 2} On February 7, 2005, relator, Cincinnati Bar Association, charged respondent with professional misconduct. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, considered the parties' exhibits and comprehensive stipulations, and made findings of fact, conclusions of law, and a recommendation. The board adopted the panel's findings of misconduct, but increased the recommended sanction.

### Misconduct

{¶ 3} Respondent, a sole practitioner since 1977, practices mainly domestic-relations and juvenile law. During the summer of 2004, a married couple retained respondent to represent them in anticipated custody/dependency proceedings involving their 13–year–old grandson, whom they had adopted years before. The charges of misconduct against respondent arose because respondent acted as the grandson's attorney during juvenile court proceedings, despite the fact that the boy was already represented by a public defender. At the same time, the respondent represented the boy's grandparents relative to the dependency proceedings.

{¶ 4} Authorities in Hamilton County initiated the dependency proceedings because the grandparents, in an attempt to keep the grandson out of trouble after he was charged with two counts of aggravated arson, had locked him in the basement while they were at work. On July 28, 2004, the boy was placed in protective custody because of suspicions that he was being mistreated.

{¶ 5} The grandson had been charged with aggravated arson because he had set fire to two paper towels in a school bathroom, albeit without causing any injuries or property damage. On July 7, 2004, Soumyhait Dutta, a public defender assigned to represent the grandson, entered denials on the boy's behalf. Dutta also represented the grandson on July 15, 2004, when the court continued the trial in the case until August 12, 2004.

{¶ 6} Respondent appeared with his clients at their grandson's August 12 trial; however, he did not confine himself to representing their interests. Without having investigated the case or having previously spoken to the boy, respondent acted as the grandson's counsel and negotiated a plea agreement with the

prosecutor in the case. The prosecutor agreed to dismiss the first-degree felony aggravated-arson charge in exchange for the grandson's admission to a second-degree felony charge of aggravated arson.

{¶ 7} Shortly after these negotiations (which took place before the case was called), a public defender appeared, at Dutta's request, to defend the grandson. The prosecutor introduced respondent as the boy's private attorney, and when respondent confirmed this representation, the public defender left. Respondent and the prosecutor then presented the negotiated plea agreement to the magistrate, and respondent again represented that he was the grandson's lawyer. The magistrate consequently substituted respondent for the public defender as counsel of record.

{¶ 8} Respondent sat with the grandson at counsel's table during the proceedings on August 12. After the prosecutor's brief statement of the case against the grandson, respondent allowed the boy to admit committing aggravated arson, a second-degree felony. Respondent then offered only this statement in mitigation: "[The] grandparents have done what they can to control him, but they're maybe a little older and they both have to work. And it's really a difficult situation at home. The grandparents had tried to do the best they can."

{¶ 9} During the August 12 proceedings, the magistrate inquired of a Hamilton County Job and Family Services caseworker about that agency's interest in the case. The caseworker failed to report that the boy had been removed from his grandparents' home because of mistreatment, and respondent, who should have realized the mistake, said nothing. His silence concealed from the court the grandparents' and their grandson's conflicting interests and deterred the magistrate from appointing a guardian ad litem.

{¶ 10} At the end of the August 12 hearing, the magistrate set the cause for a final disposition on August 26, 2004, pending completion of a probation report, and she ordered that the boy be held in detention until that date. The magistrate ordered detention without knowing the substantial mitigating factors that respondent, as the boy's attorney, should have presented—that the grandson was polite and cooperative, played orchestral harp, displayed no antisocial or criminal behaviors, regretted burning the paper towels at school, had waited for the fire to burn out before he left the bathroom, and had never meant to harm anyone.

{¶ 11} Another magistrate conducted the hearing on August 26, 2004. After reviewing the probation report, which recommended that the grandson be placed on nonreporting probation due to his minimal risk factors, the magistrate asked respondent to speak on the boy's behalf. Respondent began by referring to his clients' inability to control their grandson, and the magistrate stopped him to clarify whom he represented. Respondent advised that he represented the

grandparents, although he also admitted that he had counseled their grandson in entering his guilty plea. Respondent explained to the magistrate that he did not consider his advice to the grandson to be representation because the boy had already admitted guilt. At the panel hearing, respondent asserted that he had taken on the grandson's case to help his clients, without realizing the conflicting interests.

{¶ 12} Respondent's revelation caused the magistrate to remove respondent as counsel of record and to reinstate the public defender. The court later appointed a guardian ad litem to represent the grandson's interests and granted the public defender's motion to set aside the boy's admission. The public defender eventually negotiated a plea to a lesser offense, and the grandson was placed in the temporary custody of his paternal grandmother. The dependency proceedings were later dismissed, and the grandson eventually returned to live with his maternal grandparents. The magistrates presiding over the grandson's case and the court's chief magistrate reported respondent's improprieties to relator.

{¶ 13} Respondent admitted and the board found that in failing to disclose his dual representation to the court and purporting to represent the grandson while pursuing the grandparents' interests, he had violated DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation). Respondent also admitted and the board found that he had violated DR 1–102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice) because the dual representation deprived the grandson of competent, independent counsel. Respondent admitted and the board found that respondent's representation of clients with conflicting interests violated DR 5–105(B) (prohibiting, with limited exceptions, a lawyer from continuing to represent multiple clients where the lawyer's independent judgment on behalf of any client is likely to be adversely affected). Respondent admitted and the board found a violation of DR 7–101(A)(3) (prohibiting a lawyer from causing a client damage or prejudice) because his failure to provide available mitigation evidence resulted in the grandson's extended detention. The board further found a violation of DR 7–106(B)(2) (requiring a lawyer to disclose the identity of his clients to a tribunal).

## Recommended Sanction

{¶ 14} In recommending a sanction for respondent's misconduct, the panel and board weighed the mitigating and aggravating factors of his case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 15} In mitigation, the panel and board found that respondent had no record of prior professional discipline and that he had been cooperative and truthful during the disciplinary process. BCGD Proc.Reg. 10(B)(2)(a) and (d). Respon-

dent also cited his active membership in the Cincinnati Bar Association and participation in the Sister City Program as mitigating factors.

{¶ 16} As aggravating factors, the panel and board found that respondent's victim, the grandson, was very vulnerable and suffered serious harm, including the boy's two-week detention due to respondent's inadequate representation. Respondent admitted that he did not zealously represent the grandson and that while professing to represent the boy, respondent's goal had been to keep him from returning to his grandparents' home.

{¶ 17} Though respondent claimed to accept responsibility for and to regret his misconduct, the panel and board were skeptical that he genuinely appreciated the extent of his wrongdoing. BCGD Proc.Reg. 10(B)(1)(G). The panel tried to imagine the confusion and fear this 13-year-old boy must have experienced upon entering the courtroom, learning that a stranger had negotiated for him to plead guilty to a very serious crime, and then being taken away to detention. Respondent's failure to display any real compassion for the boy deeply troubled the panel, and the board shared that concern.

{¶ 18} Relator proposed that respondent be suspended from the practice of law for six months. Respondent advocated a six-month suspension with the entire period stayed.

{¶ 19} The panel recommended that respondent's license to practice be suspended for two years, with the entire period to be stayed provided that respondent serve a two-year probation. The panel further recommended that a monitoring attorney, appointed by relator, oversee respondent's practice during the probation and counsel him on proper case preparation and client communication. The board recommended a more severe sanction, citing "[r]espondent's lack of concern for the juvenile client or interest in his representation." The board recommended a two-year suspension with 18 months stayed and probation under the same conditions recommended by the panel during the stayed suspension. Respondent objects to the board's recommendation.

## Review

{¶ 20} We agree that respondent violated DR 1–102(A)(4), 1–102(A)(5), 5–105(B), 7–101(A)(3), and 7–106(B)(2), as found by the board. We also overrule respondent's objections and adopt the board's recommended sanction.[1]

{¶ 21} Respondent argues in favor of the panel's two-year, conditionally stayed suspension, urging us to defer to the panel's credibility determinations as to the sincerity of his remorse. We have. Neither the panel nor the board was

---

1. Relator's motion to strike respondent's objections for failure to comply with the briefing requirements of S.Ct.Prac.R. VI is overruled.

convinced that respondent truly regretted his misconduct or realized its gravity. Upon review of respondent's testimony and the exhibits, we also doubt respondent's contrition.

{¶ 22} Respondent also asserts that mitigating factors militate against an actual suspension. We disagree. Respondent's dual representation seriously compromised this juvenile and the legal process. Respondent completely disregarded the grandson's right to competent, independent counsel and impeded the magistrates' efforts to safeguard that right. That a lawyer would pose as counsel for an adverse party in any case is egregious, but such pretense is unthinkable when a child's interests are at stake.

{¶ 23} An actual suspension of a lawyer's license to practice is the appropriate sanction when the lawyer has intentionally misrepresented a crucial fact to a court in order to benefit a party. *Disciplinary Counsel v. Greene* (1995), 74 Ohio St.3d 13, 16–17, 655 N.E.2d 1299. Respondent deliberately misrepresented his status as defense counsel to juvenile court magistrates, a prosecutor, and a public defender to prevent his clients' grandson from returning to live with his clients. Respondent's misconduct thus warrants an actual suspension.

{¶ 24} Respondent is therefore suspended from the practice of law in Ohio for two years; however, the last 18 months of the suspension are stayed on the conditions that respondent commit no further misconduct and serve an 18–month probation pursuant to Gov.Bar R. V(9). During the probation, respondent shall allow a monitoring attorney, appointed by relator, to oversee his practice and counsel him on proper case preparation and client communication. If respondent fails to comply with the terms of the stay, the stay will be lifted and he shall serve the entire two-year suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———————

William E. Clements; Peter Rosenwald; and Dimity V. Orlet, Assistant Bar Counsel, for relator.

Jeffrey L. Adams, for respondent.