TOLEDO BAR ASSOCIATION *v.* MILLER.

[Cite as *Toledo Bar Assn. v. Miller,* 132 Ohio St.3d 63, 2012-Ohio-1880.]

*Attorneys at law—Misconduct—One-year license suspension, with six months stayed on condition of no further misconduct, followed by monitored probation.*

(No. 2011-1750—Submitted December 7, 2011—Decided May 2, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-006.

_____

**Per Curiam.**

{¶ 1} Respondent, Harvey C. Miller of Sylvania, Ohio, Attorney Registration No. 0071490, was admitted to the practice of law in Ohio in 1999. In February 2011, relator, Toledo Bar Association, filed a complaint against Miller, charging him with violating Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement to a tribunal), 1.15(a) (requiring that client property be held separate from the lawyer's own property), 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 2} The parties entered into stipulations of fact that Miller made false statements to a tribunal, diverted funds from a client trust account of the law firm to pay the expenses of one of Miller's personal clients, and engaged in conduct that adversely reflects on Miller's fitness to practice law. The stipulations expressed the parties' agreement that Miller had thereby violated the Rules of Professional Conduct as charged except Prof.Cond.R. 8.4(c); the relator dismissed that count at the hearing of the panel of the Board of Commissioners on Grievances and Discipline.

**{¶ 3}** The panel found that Miller had committed the stipulated violations and recommended imposing the agreed-upon sanction of a one-year license suspension conditionally stayed for six months. The panel further recommended that the six-month actual suspension be followed by a year of monitoring by an attorney of relator's choosing. The board concurred in these findings and conclusions, and we accept the board's recommendation.

## Factual Background

**{¶ 4}** Miller joined the law firm Bugbee & Conkle, L.L.P. ("Bugbee"), in Toledo, Ohio, in November 2000 and was a full-time, hourly employee at the firm until 2007, when he became a nonequity partner. Miller continued as partner at the firm until his termination on December 21, 2009.

**{¶ 5}** Miller is a debtor subject to a Wisconsin judgment enforced against him through *Miller v. Miller*, Lucas C.P. No. LN-2006-03795. On June 4, 2007, a garnishment notice was delivered to the law firm concerning Miller's debt, naming the law firm as garnishee. As a Bugbee partner, Miller responded to the court in the "answer of garnishee" that Bugbee did not possess, hold, or otherwise own any property of Miller's that might be subject to garnishment. Additionally, Miller marked the answer "NO" on behalf of the firm with respect to whether Miller was employed with the firm.

**{¶ 6}** A second garnishment notice arrived at the law firm two months later. That notice asked whether Bugbee had "money, property, or credits other than personal earnings of the Judgment Debtor under the Garnishee's control and in the Garnishee's Possession." Miller marked "No" and signed the response as a partner of Bugbee. The notice was filed with the court on September 6, 2007. Miller has stipulated that the answers on both forms were false. Bugbee terminated Miller's employment on December 21, 2009.

**{¶ 7}** On June 17, 2009, Miller and his wife had filed a Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Ohio, case No. 09-34073. Miller had been ordered to pay to certain creditors

2

about ten percent of what he owed them. Two days after his dismissal from Bugbee, Miller filed a motion in the bankruptcy case to suspend his payments under this wage-earner plan because Miller had been "laid off" from Bugbee and had no income. But while Miller's formal employment with Bugbee had ended, Miller received from Bugbee his draw of $6,000 on December 31, 2009. Additionally, a separation agreement between Bugbee and Miller authorized three payments to Miller totaling $25,000, beginning in January 2010. Miller stipulated that he was aware when he filed the motion in the bankruptcy court that he would receive three payments under the separation agreement if he satisfied certain obligations. In addition, Miller liquidated the $22,392 in his Bugbee retirement plan on January 10, 2010.

{¶ 8} On February 1, 2010, Miller received the first of his three separation-agreement payments, for $8,333. At the hearing on Miller's motion to suspend his payments on January 19, 2010, Miller did not inform the bankruptcy trustee or court of any funds he had received or would be entitled to after December 21. On January 20, 2010, the court, without knowing of these payments, granted Miller's motion to suspend his Chapter 13 payments because Miller had been "laid off." Miller stipulated that his failure to disclose the payments in connection with his motion in the bankruptcy court constituted a violation of Prof.Cond.R. 3.3(a)(1).

{¶ 9} During 2008, Miller represented pro bono a client who was not a client of the Bugbee firm (the "Miller client"). In August 2008, Miller directed Bugbee's bookkeeper to access the escrow account of another client, who was a client of the firm (the "Bugbee client"), to pay a filing fee of the Miller client. When the check was discovered, the firm advised the Bugbee client that its account had been erroneously accessed to pay a filing fee, and the firm repaid the Bugbee client $300. Miller has stipulated that his conduct violated Prof.Cond.R. 1.15(a) and 8.4(h).

{¶ 10} In reviewing the stipulations and the panel's recommendation, we agree with the board that Miller has violated Prof.Cond.R. 1.15(a), 3.3(a)(1), and 8.4(h).

**Sanction**

{¶ 11} When imposing sanctions for attorney misconduct, we consider several factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 12} After finding that Miller had committed the stipulated violations, the board weighed the mitigating and aggravating factors. In mitigation, the board took into account that Miller had not previously been disciplined, that he has acknowledged his wrongdoing and has expressed remorse about it, and that he has been active in his church. BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e). As aggravating factors, the board concluded that the unauthorized use of client funds indicated a character flaw and that Miller had acted with a dishonest motive in the pro bono case and in misleading the bankruptcy court. BCGD Proc.Reg. 10(B)(1)(b). Lastly, the board concluded that the violations constituted a pattern of misconduct and multiple offenses. BCGD Proc.Reg. 10(B)(1)(c) and (d).

{¶ 13} Case law supports an actual license suspension when extensive misconduct involves dishonesty that adversely reflects on the attorney's fitness to practice law. *See Disciplinary Counsel v. Greene*, 74 Ohio St.3d 13, 655 N.E.2d 1299 (1995), syllabus; *see also Cincinnati Bar Assn. v. Lukey*, 110 Ohio St.3d 128, 2006-Ohio-3822, 851 N.E.2d 493, ¶ 23; *accord Mahoning Cty. Bar Assn. v. Olivito*, 110 Ohio St.3d 64, 2006-Ohio-3564, 850 N.E.2d 702, ¶ 20, citing *Disciplinary Counsel v. Shaffer*, 98 Ohio St.3d 342, 2003-Ohio-1008, 785 N.E.2d 429, ¶ 13-14.

{¶ 14} Likewise, mishandling of trust-account funds has resulted in sanctions ranging from a stayed six-month suspension, *Disciplinary Counsel v. LaRue*, 122 Ohio St.3d 445, 2009-Ohio-3604, 912 N.E.2d 101, to an indefinite suspension when combined with lack of candor in the disciplinary process itself, *Disciplinary Counsel v. Wise*, 108 Ohio St.3d 381, 2006-Ohio-1194, 843 N.E.2d 1198. In light of Miller's admitted dishonesty and the seriousness of these combined violations, we agree that precedent supports the board's recommendation.

{¶ 15} Miller, as a lawyer and a party, lied to courts in both the garnishment inquiry and at the bankruptcy hearing. In *Greene*, we imposed a partially stayed suspension upon the license of a lawyer who lied to a judge about a fact in a case and whose conduct adversely reflected on his fitness to practice law. 74 Ohio St.3d at 14, 655 N.E.2d 1299. We held, "When a lawyer intentionally misrepresents a crucial fact to a court in order to effect a desired result to benefit a party, the lawyer will be suspended from the practice of law in Ohio for an appropriate period of time." Id. at syllabus. In *Olivito,* we imposed a two-year suspension with one year stayed, where the respondent had, among other things, made misrepresentations to the bankruptcy court. 110 Ohio St.3d 64, 2006-Ohio-3564, 850 N.E.2d 702, ¶ 9, 20, 22. And in *Lukey*, we echoed our holding in *Greene* by emphasizing, "An actual suspension of a lawyer's license to practice is the appropriate sanction when the lawyer has intentionally misrepresented a crucial fact to a court in order to benefit a party." 110 Ohio St.3d 128, 2006-Ohio-3822, 851 N.E.2d 493, ¶ 23.

{¶ 16} We therefore find that Miller violated Prof.Cond.R. 1.15(a), 3.3(a)(1), and 8.4(h), and we agree that a one-year suspension of Miller's license, with six months of the suspension stayed on condition, is appropriate. Miller is suspended from the practice of law for one year, with six months of the suspension stayed upon the condition that he engage in no further misconduct. If Miller violates the terms of this stay, the stay will be lifted, and Miller will serve

the entire 12-month suspension. When Miller returns to the practice of law, a one-year period of probation shall begin pursuant to Gov.Bar R. V(9), during which Miller shall work with a monitoring attorney. Miller shall meet with the monitoring attorney at least once a month, and the monitoring attorney shall submit reports to the relator on a quarterly basis.

{¶ 17} Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Michael A. Bonfiglio, Toledo Bar Counsel, and Amy E. Stoner, for relator.

Boss & Vitrou Co., L.P.A., and Charles M. Boss, for respondent.

_____