**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Brown-O'Neal*, **Slip Opinion No. 2024-Ohio-5571.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5571

DISCIPLINARY COUNSEL *v.* BROWN-O'NEAL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Brown-O'Neal*, Slip Opinion No. 2024-Ohio-5571.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—One-year suspension with six months conditionally stayed.*

(No. 2024-1109—Submitted September 17, 2024—Decided November 27, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-001.

_____

The per curiam opinion below was joined by DEWINE, DONNELLY, STEWART, and DETERS, JJ. KENNEDY, C.J., and FISCHER, J., concurred in part and dissented in part and would not stay the suspension. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Tyresha Monique Brown-O'Neal, of Cleveland, Ohio, Attorney Registration No. 0084636, was admitted to the practice of law in Ohio in 2009.

{¶ 2} In a January 4, 2024 complaint, relator, disciplinary counsel, charged Brown-O'Neal with professional misconduct arising from her filing falsely notarized affidavits, making false statements to the court, communicating directly with a person she knew had legal representation, and inducing another attorney to violate the Rules of Professional Conduct. Relator also charged her with failing to appear for juvenile-court hearings and failing to serve counsel with written motions. The parties submitted stipulations of fact, misconduct, and mitigating and aggravating factors as well as stipulated exhibits.

{¶ 3} A three-member panel of the Board of Professional Conduct found that Brown-O'Neal had committed the charged misconduct, and it recommended a sanction of a one-year suspension, with six months stayed on the condition that she refrain from further misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No objections were filed.

{¶ 4} After a review of the record and our caselaw, we adopt the board's findings of misconduct and recommended sanction.

## MISCONDUCT

{¶ 5} Brown-O'Neal's misconduct stems from her representation in a child-neglect matter. In June 2021, the Cuyahoga County Division of Children and Family Services ("the division of family services") filed a complaint alleging the neglect of two minors, S.H. and G.G. S.H. and G.G. share a mother, Shawnte, but have different fathers.

{¶ 6} Public defenders represented all three parents; Shawnte and G.G.'s father shared counsel. At the emergency custody hearing, Shawnte terminated her and G.G.'s father's representation, and it appears from the record that they

2

proceeded pro se. The court awarded temporary custody of S.H. to S.H.'s father and temporary custody of G.G. to the division of family services. However, Shawnte and G.G.'s father left with the child, violating the court's order that required them to surrender G.G. immediately.

{¶ 7} On July 9, the division of family services sought to hold Shawnte and G.G.'s father in contempt for not relinquishing G.G. when it tried to take custody of the child. On July 10, Shawnte and G.G.'s father hired Brown-O'Neal to represent them in S.H.'s and G.G.'s cases.

{¶ 8} On July 12, the court held a hearing, at which Brown-O'Neal, Shawnte, and G.G.'s father failed to appear. Shawnte and G.G.'s father were found to be in contempt, and the court issued warrants for their arrest. On July 13, Brown-O'Neal entered an appearance on behalf of only Shawnte and on July 16 filed a motion to recall the warrants for Shawnte and G.G.'s father. Attached to the motion were purported affidavits that Brown-O'Neal claimed to have notarized—though she was never commissioned as a notary public. A magistrate denied the motion. Brown-O'Neal then filed several motions requesting that the court terminate the emergency custody order and recall the warrants, and she objected to the magistrate's denial of the first request to recall the warrants. The court denied each of these motions, and the case went to trial.

{¶ 9} Trial on the matter was scheduled to begin on September 8. Brown-O'Neal appeared at trial, but Shawnte and G.G.'s father did not. Because the division of family services had not successfully served Shawnte, the judge rescheduled the trial. On September 23, trial convened. Brown-O'Neal, Shawnte, and G.G.'s father did not appear. The division of family services subsequently dismissed S.H.'s and G.G.'s cases without prejudice because the time limits provided in R.C. 2151.35(B)(1) had expired.

{¶ 10} On September 28, the division of family services filed a new suit containing the same allegations. The next day, the court held an emergency

temporary custody hearing, but Brown-O'Neal, Shawnte, and G.G.'s father did not appear. The court again granted emergency temporary custody of S.H. to the child's father and emergency temporary custody of G.G. to the division of family services.

{¶ 11} On October 4, the division of family services moved for temporary custody of S.H. because S.H.'s father had allowed the child to visit with Shawnte and G.G. unsupervised. The court held an emergency hearing, but Brown-O'Neal and Shawnte did not appear. At the hearing, the court granted the motion and issued an order prohibiting S.H. from having contact with Shawnte, G.G.'s father, and G.G. The court also held Shawnte and G.G.'s father in contempt for failing to turn G.G. over to the division of family services.

{¶ 12} In November 2021, Brown-O'Neal persuaded S.H.'s father to sign an affidavit claiming that S.H. had made up allegations of "abuse and neglect" against Shawnte and G.G.'s father. Despite knowing that S.H.'s father was represented by counsel, Brown-O'Neal did not contact his attorney before speaking with him or give his counsel a copy of the affidavit before he signed it. S.H.'s father purportedly signed the affidavit electronically. Brown-O'Neal then convinced an attorney who worked for her, Lon'Cherie' D. Billingsley, to notarize the affidavit. Brown-O'Neal falsely told Billingsley that she had witnessed S.H.'s father sign it. On December 1, Brown-O'Neal sought to terminate the emergency custody order granting the division of family services custody of G.G. and included S.H.'s father's affidavit with this motion.

{¶ 13} Days later, the court held its final pretrial hearing. Billingsley attended the attorney conference before the hearing, but did not attend the hearing itself. Brown-O'Neal did not attend either the attorney conference or the hearing. At the hearing, S.H.'s father's counsel informed the court that the affidavit S.H.'s father purportedly signed was improperly obtained, and during an off-the-record conversation, Billingsley admitted that she had notarized it based on Brown-

4

O'Neal's false representations. S.H.'s father's counsel also informed the court that Brown-O'Neal had not served counsel with any of the motions Brown-O'Neal had filed in S.H.'s and G.G.'s cases. Brown-O'Neal's certificates of service either said that she had served S.H.'s father, even though he had a lawyer, or falsely stated that she had served S.H.'s father's counsel. The court struck S.H.'s father's affidavit and all of Brown-O'Neal's motions.

{¶ 14} Over the next couple of years, Brown-O'Neal represented Shawnte in S.H.'s and G.G.'s cases, continuing to rely on the improperly obtained and falsely notarized affidavit of S.H.'s father.

{¶ 15} The board found that Brown-O'Neal violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 4.2 (prohibiting a lawyer from communicating about the subject of the representation with a person the lawyer knows to be represented by another lawyer unless the lawyer has the consent of the other lawyer or is authorized by law or a court order), 8.4(a) (prohibiting a lawyer from knowingly inducing another lawyer to violate or attempt to violate the Ohio Rules of Professional Conduct), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We adopt the board's findings of misconduct.

## SANCTION

{¶ 16} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 17} The board found the following aggravating factors: Brown-O'Neal engaged in a pattern of misconduct, committed multiple offenses, and harmed vulnerable people. *See* Gov.Bar R. V(13)(B)(3), (4), and (8). As for mitigation,

the board found that Brown-O'Neal had no prior discipline, had a cooperative attitude toward the proceedings, and provided evidence of good character. *See* Gov.Bar R. V(13)(C)(1), (4), and (5).

{¶ 18} The board recommends that we suspend Brown-O'Neal for one year, with six months stayed on the condition that she engage in no further misconduct. In determining the proper sanction to recommend for her misconduct, the board first recognized that violations of ethical rules prohibiting dishonesty, fraud, deceit, or misrepresentation carry a presumptive sanction of an actual suspension from the practice of law. *See Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261, syllabus. The board then reviewed cases involving similar misconduct and addressed the facts that Brown-O'Neal had caused another attorney to commit misconduct and that she had served as a part-time magistrate.

{¶ 19} The cases the board considered included *Disciplinary Counsel v. Schuman*, 2017-Ohio-8800; *Toledo Bar Assn. v. Miller*, 2012-Ohio-1880; and *Warren Cty. Bar Assn. v. Vardiman*, 2016-Ohio-352. In each of those cases, we imposed a one-year suspension with six months conditionally stayed.

{¶ 20} In *Schuman*, the attorney lied to a court in order to receive attorney fees to which he was not entitled. *Schuman* at ¶ 8. The attorney served as guardian ad litem for a child in a custody case, for which the court had approved a fee of $3,416. *Id*. at ¶ 3. When the parents did not pay in full, the attorney sued them and obtained a default judgment. *Id*. at ¶ 4. However, the attorney made false statements and submitted a fraudulently altered document to support his claim that the parents owed him $6,405. *Id*. And despite several opportunities to admit his dishonesty, the attorney continued his deception until facing disciplinary proceedings. *Id.* at ¶ 8.

{¶ 21} In *Miller*, the attorney's firm received a notice to garnish his wages, and the attorney responded on behalf of the firm making false statements about his employment. *Miller* at ¶ 4-6. Additionally, in a subsequent bankruptcy proceeding,

he misrepresented that he had been laid off and had no income, despite knowing that he would receive more than $30,000 following his separation from his firm. *Id*. at ¶ 7-8. The attorney also misused funds of a client of the firm to pay a filing fee for a pro bono client. *Id*. at ¶ 9.

{¶ 22} In *Vardiman*, the attorney forged the name of an unrepresented party on four separate documents and then filed them in court. *Vardiman*, 2016-Ohio-352, at ¶ 6-8. The attorney did not disclose his dishonesty to the court until he was confronted by the court. *Id*. And in a separate matter, he forged the name of a witness to a will and a power of attorney. *Id.* at ¶ 11.

{¶ 23} In addition to the cases the board considered, we find *Disciplinary Counsel v. Jarvis*, 2022-Ohio-3936, instructive. In *Jarvis*, we imposed an 18-month suspension conditionally stayed in its entirety on an attorney who engaged in multiple acts of dishonesty while representing a married couple and their trustee in an estate-planning matter. *Jarvis* at ¶ 1-3. The attorney falsely notarized and backdated several documents, signed documents as a witness despite not having been present to witness them being signed, and attested that one of his clients appeared to be of sound mind when he knew that the client suffered from Alzheimer's disease. *Id.* at ¶ 12, 14. Additionally, the attorney directed his office manager to meet with the client and obtain signatures on estate-planning documents that the attorney later falsely notarized. *Id.* at ¶ 14. The attorney also directed the same office manager to falsely sign a will and durable power of attorney as a witness. *Id.* at ¶ 13. Nonetheless, there was enough mitigation—having no prior discipline, exhibiting a cooperative attitude in disciplinary proceedings, and having incurred other penalties—to fully stay the suspension. *Id*. at ¶ 31, 40.

{¶ 24} The board also focused on Brown-O'Neal's inducing another attorney to commit misconduct, as well as her serving as a part-time magistrate. The board noted our precedent indicating that an actual suspension is appropriate when an attorney causes another to violate the ethics rules. *See Disciplinary*

*Counsel v. Jancura*, 2022-Ohio-3189 (imposing an actual suspension on an attorney that misappropriated client funds and induced her husband who was also an attorney to make false representations on her behalf). Additionally, the board concluded that, based on our precedent, an attorney's committing misconduct while holding a position of trust justifies a more serious sanction, *see, e.g.*, *Disciplinary Counsel v. Kelly*, 2009-Ohio-317, ¶ 14 (attorney's misconduct "tarnished the legal system all the more" because she was president of her local bar association and employed as the chief domestic relations magistrate), even when the misconduct is unrelated to the position, *see, e.g.*, *Disciplinary Counsel v. Hillis*, 2014-Ohio-2113, ¶ 6 (concluding that an attorney's elected position led to imposition of a greater sanction).

**{¶ 25}** After reviewing our caselaw, considering the *Fowerbaugh* presumption of suspension, *see Fowerbaugh*, 1995-Ohio-261, at syllabus, and taking into consideration the full extent of Brown-O'Neal's misconduct, we conclude that a one-year suspension with six months conditionally stayed is warranted. Here, like the attorneys in *Schuman*, *Miller*, and *Vardiman*, Brown-O'Neal made repeated misrepresentations to the court. Like the attorneys in *Schuman* and *Miller*, she maintained those misrepresentations over a period of time. And as in *Jarvis*, Brown-O'Neal involved another person in her misconduct and falsely notarized documents. But Brown-O'Neal's misconduct is worse than that of the attorney in *Jarvis*, because she also violated Prof.Cond.R. 8.4(a), which carries a presumption of an actual suspension, and she committed her misconduct at the same time she held a position as a part-time magistrate. We conclude that Brown-O'Neal's misconduct was not isolated and that there is not sufficient mitigation to overcome the presumption of an actual suspension recognized in *Fowerbaugh*. In accord with *Schuman*, *Miller*, and *Vardiman*, we impose a one-year suspension with six months conditionally stayed.

**{¶ 26}** "[W]e have consistently recognized that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. Edwards*, 2012-Ohio-5643, ¶ 19, citing *Disciplinary Counsel v. O'Neill*, 2004-Ohio-4704, ¶ 53. Here, we conclude that an actual suspension protects the public and demonstrates that this type of behavior, especially from those in a position of trust, is not acceptable. Therefore, we adopt the board's recommended sanction that Brown-O'Neal be suspended from the practice of law for one year, with six months stayed on the condition recommended by the board.

## CONCLUSION

**{¶ 27}** Accordingly, Tyresha Monique Brown-O'Neal is suspended from the practice of law in Ohio for one year, with six months of the suspension stayed on the condition that she refrain from further misconduct. If Brown-O'Neal violates the condition of the stay, the stay will be lifted, and she will serve the one-year suspension in its entirety. Costs are taxed to Brown-O'Neal.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle A. Hall and Marley C. Nelson, Assistant Disciplinary Counsel, for relator.

UB Greensfelder, L.L.P., and Alvin E. Mathews Jr., for respondent.

_____