[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Harmon,* Slip Opinion No. 2014-Ohio-4598.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4598

DISCIPLINARY COUNSEL *v.* HARMON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Harmon,* Slip Opinion No. 2014-Ohio-4598.]**

*Attorneys at law—Misconduct—Violations of the Rules of Professional Conduct, including engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, conduct prejudicial to the administration of justice, and conduct adversely reflecting on fitness to practice law—Two-year suspension with one year stayed on conditions.*

(No. 2013-1983—Submitted February 5, 2014—Decided October 22, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-081.

————————————

**Per Curiam**.

{¶ 1} Respondent, Paul Dare Harmon of Howard, Ohio, Attorney Registration No. 0023923, was admitted to the Ohio bar in 1979.

{¶ 2} In September 2013, relator, disciplinary counsel, submitted a complaint to the Board of Commissioners on Grievances and Discipline alleging

that Harmon engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation when he failed to disclose certain information and assets in his December 2009 bankruptcy filing and gave false testimony during his bankruptcy proceedings. Relator further alleged that this conduct adversely reflected on Harmon's fitness to practice law and was prejudicial to the administration of justice. A probable-cause panel of the board certified the complaint in October 2013, and the secretary of the board appointed a three-member panel to hear the case.

{¶ 3} The parties entered into stipulations of fact and mitigating factors. After conducting a hearing, the panel issued a report finding that Harmon had engaged in the charged misconduct and recommending that he be suspended from the practice of law for one year. The board adopted the panel's findings of fact and misconduct as amended, but recommends that we suspend Harmon for two years, with the second year stayed on conditions. For the reasons that follow, we adopt the board's findings of fact, conclusions of law, and recommended sanction.

**Misconduct**

{¶ 4} Harmon testified that he experienced a personal crisis in 2004. He did not reveal any details of that crisis but explained that it resulted in a series of poor financial decisions. In a letter that he sent to his bankruptcy attorney in September 2010, however, he stated that following some painful disclosures by his wife in 2004, he "escaped into alcohol and gambling." His financial stress was compounded by two unsuccessful judicial campaigns that he funded with his retirement savings.

{¶ 5} In the spring of 2009, Harmon's law-firm operating account was attached by a creditor. Consequently, he stopped using that account and began to pay his bills by cash and through his wife's separate bank account.

{¶ 6} Harmon consulted with a bankruptcy attorney about filing for bankruptcy protection in August 2009. His attorney prepared and filed a Chapter

2

petition on his behalf in December 2009. By signing his bankruptcy petition, Harmon declared under the penalty of perjury that he had fully disclosed his finances. But it was later discovered that the petition did not properly disclose all his assets.

**{¶ 7}** In January 2010, Harmon testified at a creditors' meeting. Responding to the trustee's questions, he testified that he had reviewed his bankruptcy petition before signing it and had fully disclosed his assets. He specifically testified that he did not have a bank or retirement account and that while he had approximately $1,000 in accounts receivable, they were not realistically collectible.

**{¶ 8}** Shortly after the creditor's meeting, the trustee learned that Harmon was the plaintiff in a pending defamation action, filed just two months before his bankruptcy petition, in which he sought $500,000 in damages. Harmon amended his bankruptcy petition to include the lawsuit on February 26, 2010, and while he signed this amendment asserting that he had fully disclosed his finances, additional assets existed that he once again failed to disclose.

**{¶ 9}** An adversary proceeding ensued, and Harmon retained new counsel, who represented him at his first two depositions. After Harmon's second deposition, counsel filed a second amended bankruptcy petition that finally disclosed all of Harmon's assets, including his interest in his wife's bank account, stocks, a security deposit associated with his office lease, and additional accounts receivable.

**{¶ 10}** At his third deposition, Harmon appeared pro se and testified that his prior deposition testimony was truthful but that he had made some mistakes in his answers—like failing to disclose that he was using his wife's bank account when asked how he was paying his bills.

**{¶ 11}** The bankruptcy court ultimately found that by failing to fully disclose his assets in his bankruptcy petition and in his deposition testimony,

Harmon had knowingly made false statements of material fact under oath with either fraudulent intent or reckless disregard of the truth. Therefore, the court refused to discharge his debts in bankruptcy.

{¶ 12} Harmon stipulates that he failed to disclose five assets in his initial bankruptcy petition: (1) his interest in the defamation action he had filed just two months before his bankruptcy petition, (2) his interest in his wife's bank account, (3) a security deposit linked to his office lease, (4) stocks, and (5) accounts receivable. In this disciplinary proceeding, he admitted that he did not read the petition before signing it and claimed that he had merely signed the documents as instructed, trusting that his attorney had properly completed the forms.

{¶ 13} Harmon steadfastly maintained, however, that his omissions were due to his own ignorance of bankruptcy law and the malpractice of his bankruptcy attorneys. He argued that even if he had read the documents, he is not a bankruptcy attorney and would not have understood what needed to be disclosed. He also claimed that while he believed his defamation suit had merit, he thought that it had no value because he would not be able to prove damages. The panel and board were not persuaded by these arguments and noted that the bankruptcy court had stated that "one need not be a sophisticated bankruptcy attorney to understand the [bankruptcy petition's] schedules. They are written in plain English that any literate person can understand." Moreover, they observed that Harmon did not avail himself of several opportunities to correct the record and fully disclose his assets.

{¶ 14} Harmon repeatedly claimed that his attorneys and the bankruptcy trustee were responsible for his misconduct. He testified that neither of his attorneys had prepared him for his depositions and that he answered the questions as best he could. He argued that he had not lied but that he had made "mistakes" in answering some of the questions. Although he filed malpractice actions against both of his attorneys, he reported that the claims were dismissed when the

bankruptcy trustee refused to investigate them. He further claimed that the trustee "targeted" him and refused to believe anything he told her.

{¶ 15} The panel found by clear and convincing evidence that Harmon's conduct violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 16} In adopting the panel's findings of fact and misconduct, the board also expressly found that Harmon's conduct was sufficiently egregious to support a finding that his conduct adversely reflected on his fitness to practice law in violation of Prof.Cond.R. 8.4(h), consistent with our opinion in *Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21 (holding that in order to find a violation of Prof.Cond.R. 8.4(h), there must be clear and convincing evidence that a lawyer has engaged in conduct that while not specifically prohibited by the rules, nonetheless adversely reflects on the lawyer's fitness to practice law, *or* that the lawyer's conduct is sufficiently egregious to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law).

{¶ 17} We adopt the board's findings of fact and find that Harmon's conduct violates Prof.Cond.R. 8.4(c), (d), and (h).

### Sanction

{¶ 18} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors

listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 19} As mitigating factors, the parties have stipulated and the panel and board have found that Harmon (1) has no prior disciplinary record, (2) demonstrated a cooperative attitude in the disciplinary proceedings, and (3) has had other penalties or sanctions imposed for his misconduct, including the bankruptcy court's refusal to discharge his debts and his payment of restitution to the trustee for the assets he withheld. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), and (f).

{¶ 20} The panel and board found just one aggravating factor—that Harmon has failed to accept responsibility for his misconduct. *See* BCGD Proc.Reg. 10(B)(1)(g). They note that Harmon admits only to mistakes that led to his financial ruin, including his use of alcohol and gambling. But even though he testified that he had completed an outpatient-treatment program for alcohol abuse, he claimed that the real problem was not alcohol, but his inability to handle a difficult time in his life. And although he testified that he had shared information about his personal crisis in his pleadings, he has not offered any details that would permit the board or this court to assess the severity of the problem, its effects on him, or the risk of repetition in the future.

{¶ 21} While Harmon testified that he entered into a four-year contract with the Ohio Lawyers Assistance Program ("OLAP") in October 2010, the panel and board found that at the time of the hearing he had not been in contact with the organization for a year and a half. Moreover, he blamed OLAP for the lapse in communication, arguing that its representatives should have tracked him down. The week before his disciplinary hearing, Harmon revoked the release that would have permitted OLAP to discuss his case with relator. He explained that because OLAP had no idea what was going on in his life, he did not want its representatives discussing his case with relator. The board was clearly frustrated

by Harmon's efforts to conceal this information, which hampered its efforts to assess his ability to deal with the crises in his life and raised additional concerns regarding the risk of harm to future clients.

{¶ 22} Relator argued in favor of a one-year actual suspension for Harmon's misconduct, citing *Toledo Bar Assn. v. Miller*, 132 Ohio St.3d 63, 2012-Ohio-1880, 969 N.E.2d 239. When a garnishment notice concerning his private debt was sent to Miller's law firm, Miller, a nonequity partner, twice made false statements about his employment. *Id.* at ¶ 4-6. And in his subsequent bankruptcy proceeding, he falsely represented that he had been laid off and had no income, though he knew that he would receive more than $30,000 following his separation from his firm. *Id.* at ¶ 7-8. Miller also used money held in escrow for a client of the law firm to pay a filing fee for a pro bono client who was not a client of the law firm. *Id.* at ¶ 9. After weighing these factors, we suspended Miller from the practice of law for twelve months, with six months stayed on conditions. *Id.* at ¶ 16.

{¶ 23} The board noted that a violation of Prof.Cond.R. 8.4(c) typically results in an actual suspension from the practice of law unless significant mitigating factors warrant a departure from that rule. *See, e.g., Disciplinary Counsel v. Potter*, 126 Ohio St.3d 50, 2010-Ohio-2521, 930 N.E.2d 307, ¶ 10; *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180, ¶ 45.

{¶ 24} Distinguishing the sanction imposed in *Miller* on the ground that Miller had acknowledged his wrongdoing and expressed remorse, while Harmon continues to blame others for his failure to disclose all of his assets in his bankruptcy proceedings, the panel recommended that Harmon be suspended for one year, with no stay. The panel further recommended that before Harmon be permitted to apply for reinstatement to the practice of law, he be required to submit to an evaluation conducted by OLAP or a health-care professional

designated by OLAP, enter into an OLAP contract with the duration and terms to be determined by OLAP, and comply with the terms of that contract.

{¶ 25} The board amended the panel's recommendation and suggests that a two-year suspension, with the second year stayed on conditions, is the appropriate sanction for Harmon's misconduct. Harmon has demonstrated an inability to accept responsibility for his failure to fully disclose his assets, concealed the nature of the personal crisis that purportedly set his misconduct in motion, failed to abide by the terms of his four-year OLAP contract, denied that his alcohol use and gambling are a problem, and silenced OLAP in an effort to conceal the true nature of his personal struggles. For these reasons we agree that a two-year suspension, with the second year stayed on conditions, is necessary to protect the public from future harm.

{¶ 26} Accordingly, Paul Dare Harmon is suspended from the practice of law in the state of Ohio for two years, with the second year stayed on the conditions that he commit no further misconduct and that he (1) submit to a mental-health evaluation conducted by OLAP, and if OLAP determines that treatment is necessary, (2) enter into an OLAP contract, the duration of which shall be determined by OLAP, and (3) comply with all of OLAP's treatment recommendations. If Harmon fails to comply with the conditions of the stay, the stay will be lifted, and he will serve the entire two-year suspension. Costs are taxed to Harmon.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and KENNEDY, JJ., concur.

PFEIFER, FRENCH, and O'NEILL, JJ., dissent, and would impose a one-year suspension with six months stayed.

_____

Scott J. Drexel, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Paul Dare Harmon, pro se.

_____