[Cite as *State v. Green*, 2021-Ohio-2412.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

COREY GREEN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 MA 0084**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 18 CR 423 B

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor*, Atty. Ralph M. Rivera,* Assistant Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. John McNally IV*, JOHN A. MCNALLY, III. CO. L.P.A., 100 Federal Plaza East, Suite 600, Youngstown, Ohio 44503 for Defendant-Appellant.

Dated:  June 7, 2021

_____

**Robb, J.**

{¶1}   Defendant-Appellant Corey Green appeals two sentencing judgments entered after he pled guilty in separate cases in the Mahoning County Common Pleas Court.  In Case No. 18 CR 423B, he argues the theft and receiving stolen property counts should have been merged as allied offenses of similar import.  He alternatively argues the court's consecutive sentence findings were unsupported by the record.  In Case No. 18 CR 458, Appellant claims the court failed to consider the seriousness and recidivism factors in R.C. 2929.12 when sentencing him for the offense of passing bad checks.  For the following reasons, the trial court's judgment in both cases is affirmed.

STATEMENT OF THE CASE

{¶2}   On April 19, 2018, Appellant was indicted in 18 CR 423B for theft in violation of R.C. 2913.02(A)(1) and/or (A)(2), a fifth-degree felony as the value of the property was $1,000 or more but less than $7,500.  The indictment named the victim, described the property as jewelry, and said the offense occurred on March 26, 2018.  Two co-defendants were jointly indicted with Appellant for this offense.

{¶3}   On July 12, 2018, a superseding indictment added a count for receiving stolen property in violation of R.C. 2913.51(A), a fifth-degree felony as the value of the property was greater than or equal to $1,000 and less than $7,500.  This offense occurred on March 27, 2018 (the day after the theft) and was said to involve a diamond ring belonging to the same victim as the theft.  This receiving stolen property count was filed against Appellant only (while the theft count was maintained against all three defendants).

{¶4}   On May 17, 2018, Appellant was indicted in 18 CR 458 for passing bad checks in violation of R.C. 2913.11, a fifth-degree felony due to the amount of the check.  It was alleged that on March 28, 2018, Appellant wrote a $1,050 check to a named television store knowing it would be dishonored and with purpose to defraud.

{¶5}   On July 30, 2018, Appellant pled guilty to both offenses in 18 CR 423B and to the sole offense in 18 CR 458.  The state agreed to recommend community control on certain conditions.  A presentence investigation was ordered.  The court lifted its hold placed on Appellant as a result of a Pennsylvania bench warrant as the warrant had been withdrawn.  In continuing the original bond, the court set conditions such as appearing at

Case No. 20 MA 0084

future proceedings, obeying all laws, and remaining within the state (unless court permission was obtained to leave the state).

**{¶6}** The sentencing hearing commenced on September 25, 2018, and both victims gave statements at the hearing. The state explained the victim in 18 CR 423B personally met with the defendants after he advertised a ring for sale on Facebook. This victim said he and his wife decided to sell her ring because they had so many bills from their medical issues. He said he met the potential buyers in a parking lot with surveillance cameras and one of them "bolted with the ring." (9/25/18 Sent. Tr. 10). The police found the ring at a pawn shop, and the victim paid the pawn shop $750 for the return of the ring. The victim in 18 CR 458 said he ran a small business where Appellant stole from him by making a purchase with a bad check exceeding $1,000.

**{¶7}** The court agreed to continue sentencing upon Appellant's representation that he could pay restitution within 30 days as he was gainfully employed. The court's September 26, 2018 judgment set the continued sentencing hearing for October 31, 2018. However, Appellant failed to appear for the continued sentencing hearing, and a bench warrant was issued for his arrest.

**{¶8}** On February 6, 2020 (1.25 years later), Appellant was brought before the court for sentencing. The state rescinded its recommendation of community control. It was explained that upon receiving the continuance of sentencing, Appellant left the state in violation of his bond. He was then apprehended in New York and held on warrants out of New York and Pennsylvania. After serving a prison sentence in New York, he was extradited to Ohio. The court was informed that Appellant paid no restitution to the victims as anticipated by the prior continuance of sentencing.

**{¶9}** On 18 CR 458, the prosecutor reminded the court the defendant purchased a television from a store with a $1,050 check which did not clear the bank. The victim was present but did not wish to readdress the court. On 18 CR 423B, the prosecutor said: Appellant arranged via Facebook to buy a ring from the victim; they met at a fast food restaurant; Appellant said he wanted to cross the street to the gas station so someone else could view the ring; as they started walking, Appellant "snatche[d] the ring from the victim"; Appellant fled in a van that was waiting for him and his co-defendant; and Appellant thereafter sold the ring. The victim was able to recover the stolen property by paying the pawn shop $750 for the ring which was worth more than this amount; according to the indictment to which he pled guilty, it was worth $1,000 or more.

Case No. 20 MA 0084

{¶10} After defense counsel argued for leniency and Appellant exercised his allocution rights, the court spoke of Appellant's theft and receiving stolen property convictions, both fifth-degree felonies.  (2/6/20 Sent.Tr. 18).  The court emphasized that Appellant left the state in violation of his bond prior to sentencing and was then arrested out of state on warrants, which resulted in the long delay after the continued sentencing hearing (at which he made representations about paying restitution in order to obtain a sentencing continuance and to remain free on bond).  The court made various findings, including consecutive sentence findings, and imposed a sentence of 12 months "on each of the two counts" to be served consecutively.  (2/6/20 Sent Tr. 22).

{¶11} After realizing the sentencing hearing was concluded before the court reached the offense of passing bad checks in 18 CR 458, another sentencing hearing was held on February 14, 2020 in that case.  The defense indicated it had no argument to present if the court were to impose a 12-month sentence and run it concurrent to the other case, which the court agreed to do.

{¶12}  On February 18, 2020, the court issued a separate sentencing entry in each case.  In the entry for 18 CR 423B, the court made consecutive sentence findings regarding the imposition of the consecutive 12-month sentences for theft and receiving stolen property.  The entry in 18 CR 458 imposed the (concurrent) sentence of 12 months for passing bad checks, stating the court considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under O.R.C. 2929.12.

{¶13}  Appellant eventually appealed both February 18, 2020 judgment entries in a notice of appeal which was assigned one appellate case number.  He sought leave to file a delayed appeal, but due to the pandemic tolling order, his July 31, 2020 notice of appeal was accepted as timely.  *See* Ohio Supreme Court, 3/27/2020 Administrative Actions, 2020-Ohio-1166.

{¶14}  Appellant sets forth three assignments of error.  The first two assignments of error address 18 CR 423B (merger and consecutive sentences for theft and receiving stolen property).  The third assignment of error involves the sentence in 18 CR 458 (for passing bad checks).

ASSIGNMENT OF ERROR ONE:  MERGER

{¶15}  Appellant's first assignment of error contends:

"THE TRIAL COURT'S SENTENCING OF DEFENDANT-APPELLANT COREY GREEN TO CONSECUTIVE TERMS OF SENTENCES IN CASE NO. 18 CR 00423B VIOLATES R.C. 2921.25 AS THE TWO CONVICTIONS THEREIN ARE FOR ALLIED OFFENSES OF SIMILAR IMPORT."

{¶16} Appellant pled guilty to one count of theft in violation of R.C. 2913.02(A)(1)-(2), which has the following elements: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * *: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent * * *." He also pled guilty to receiving stolen property which has the following elements: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C. 2913.51(A).

{¶17} Appellant argues the theft and receiving stolen property offenses should have been merged, resulting in only one conviction and sentence in 18 CR 423B.[1] He cites cases that were decided under a former merger test and/or that do not involve a later sale of the property after the theft.

{¶18} The state points out the issue of merger was not raised below and thus Appellant must show plain error. The state says Appellant's conduct in committing each offense was separate and identifiable and points out the indictment alleged the theft offense occurred on March 26, 2018 but the receiving stolen property offense occurred the next day.

{¶19} R.C. 2941.25 codifies the constitutional double jeopardy protection against multiple punishments for the same offense. *In re A.G.*, 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, ¶ 11; *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10, 12. This statute provides:

> (A) Where the same conduct by defendant can be construed to constitute
> two or more allied offenses of similar import, the indictment or information

---

[1] In the next assignment of error, Appellant alternatively challenges the consecutive nature of the sentences for theft and receiving stolen property. He points out this merger assignment of error would not be moot even if the consecutive sentences were changed to concurrent sentences. *See, e.g., State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512, ¶ 17 ("the imposition of concurrent sentences is not the equivalent of merging allied offenses").

may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

**{¶20}** In evaluating whether allied offenses must be merged into a single conviction under R.C. 2941.25(A), the court "must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Ruff*, 143 Ohio St.3d 114 at ¶ 25.

If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.

*Id. See also id.* at ¶ 20 (setting out "three categories in which there can be multiple punishments: (1) offenses that are dissimilar in import, (2) offenses similar in import but committed separately, and (3) offenses similar in import but committed with separate animus"), ¶ 23, 26 (dissimilar import if "the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable").

**{¶21}** There is no bright-line rule governing the comparison of two offenses, and thus, the analysis may "result in varying results for the same set of offenses in different cases." *Id.* at ¶ 30, 32. "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. "Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import." *Id.* at ¶ 30.

Case No. 20 MA 0084

**{¶22}** Accordingly, older case law on the issue (utilizing an abstract, non-factual comparison of the elements to see if one offense could result in the other) is not necessarily instructive due to the changes in case law on the review to be conducted under R.C. 2941.25. We also note the receiving stolen property statute previously only covered receiving or concealing stolen property and now covers receiving, retaining, or disposing of stolen property. *See State v. Botta*, 27 Ohio St.2d 196, 197, 271 N.E.2d 776 (1971) (holding an accomplice to theft can be sentenced for receiving the same property stolen by the principal).

**{¶23}** Although a guilty plea to more than one offense is not a waiver of an allied offenses of similar import argument, the defendant has the burden to raise and demonstrate the necessity of merger at or before sentencing. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 19-20. "[B]y failing to seek the merger of his convictions as allied offenses of similar import in the trial court, [the defendant] forfeited his allied offenses claim for appellate review." *Id.* at ¶ 21.

**{¶24}** Nevertheless, Crim.R. 52(B) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An appellant has the burden to show plain error on the record by demonstrating: (1) a deviation from a legal rule, (2) which error was obvious, and (3) which affected substantial rights (involving a reasonable probability the error was outcome-determinative). *Rogers*, 143 Ohio St.3d 385 at ¶ 22.

**{¶25}** Even where the defendant shows plain error, the application of the doctrine is discretionary with the reviewing judges who are not mandated to reverse. *Rogers*, 143 Ohio St.3d 385 at ¶ 22-23; Crim.R. 52(B) (plain error "may be noticed"). Furthermore, the Supreme Court cautions reviewing courts to accept a plain error argument only after exercising "the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Rogers*, 143 Ohio St.3d 385 at ¶ 23.

**{¶26}** Appellant relies on a Supreme Court case recognizing plain error due to a failure to merge the counts of theft and receiving stolen property, which the Court said were allied offenses of similar import. *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 99, citing *Maumee v. Geiger*, 45 Ohio St.2d 238, 244, 344 N.E.2d 133 (1976) (where merger was not at issue as the defendant was charged with a sole count of receiving stolen property and unsuccessfully argued he could not be guilty of receiving stolen property because he admitted he was the thief). The Court concluded:

"the same facts" were used to convict the defendant of both offenses; a single animus was common to both; and the elements of the offenses aligned to a degree that the commission of one resulted in the commission of the other. *Yarbrough*, 104 Ohio St.3d 1 at ¶ 100-102.[2]

**{¶27}** In finding plain error, the *Yarbrough* Court was able to review the trial testimony (showing the defendant stole a vehicle and was driving it the same day that he was arrested) and the jury instructions (where the trial court said both counts involved the same vehicle). Here, we review the plea and sentencing transcripts as the case did not go to trial.

**{¶28}** It is also notable that in making the statement about the elements aligning, the *Yarborough* Court cited *Rance*, which compared the elements in the abstract rather than viewing the specific facts of the case. *See State v. Rance*, 85 Ohio St.3d 632, 638, 710 N.E.2d 699 (1999). As explained above, this is no longer the test used in Ohio.[3]

**{¶29}** Furthermore, cases involving a defendant who was convicted of theft and receiving stolen property *for one transaction* are distinguishable. Here, "the same facts" were not used to convict Appellant of both offenses. The record shows the owner of the ring arranged a meeting on Facebook with a person posing as a buyer, he met Appellant and a co-defendant near a business with video surveillance, and Appellant stole the ring from the owner by snatching it from him and fleeing to a waiting vehicle, thereby committing theft. The act of receiving stolen property relied upon by the state involved Appellant's conduct the next day when he actively disposed of the stolen property by traveling to a pawn shop and *selling* the ring.

**{¶30}** It is the specific facts that determine whether merger is required, not the potential facts that could constitute the offenses in other cases. *See Ruff*, 143 Ohio St.3d

---

[2] Appellant also relies on the Tenth District's *Bland* case. However, in that case: the *trial court* expressed that the grand theft and receiving stolen property offenses were subject to merger; the state conceded merger was necessary and elected an offense for sentencing; and the court then imposed concurrent sentences. *State v. Bland*, 10th Dist. Franklin No. 19AP-826, 2020-Ohio-4662, ¶ 7, 11. The issue on appeal was thus merely whether concurrent sentences could be upheld where the trial court found merger was necessary; the state also conceded the error on appeal.

[3] *Rance* was initially "clarified" with an explanation that although courts should compare the elements of the offenses in the abstract (without considering the specific factual evidence), a strict textual comparison or exact alignment of the elements is not required. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 26-27. Then, *Rance* was overruled, and the abstract test was abandoned when the Court concluded the conduct of the accused must be considered. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. And now, the test is the one set forth in *Ruff* as discussed supra.

Case No. 20 MA 0084

114 at ¶ 26, 30. It is important to recognize that Appellant was *not* charged with receiving stolen property because he committed the theft and thereby received the property he stole or because he retained, concealed, or possessed the property he stole.

**{¶31}** Rather, the receiving stolen property count resulted from his disposition by selling the property the day after the theft. Actively disposing of the property by selling it represents a distinct transaction. Appellant traveled to a pawn shop the next day and sold the stolen property; this was not inherent in the conduct constituting the theft but was distinct from the theft. The offenses of theft and receiving stolen property were not committed with the same conduct.

**{¶32}** We also observe that Appellant sold the property to a pawn shop while presumably representing he was entitled to sell the property as the record shows the police discovered the ring at the pawn shop and informed the victim, who then paid $750 to the pawn shop in order to immediately retrieve the ring. Appellant's separate conduct involving the sale not only had new and distinct ramifications for the owner of the stolen property but also had ramifications for the pawn shop.[4] The record thus also suggests separately identifiable harms.

**{¶33}** In the Supreme Court's more recent *Rogers* case, the defendant was apprehended after fleeing from an attempted traffic stop, and the police discovered stolen tires and rims inside his vehicle; these wheels had been removed from a truck that was found on cinder blocks. The defendant was charged with and pled guilty to one count of receiving stolen property for the truck and one count of receiving stolen property for the wheels, and the court imposed sentences on both counts. *Id.* at ¶ 8, 10. The defendant did not raise a merger issue in the trial court, but he did on appeal. *Id.* The appellate court found no plain error, but the en banc appellate court remanded to the trial court to ascertain if merger was required. *Id.* at ¶ 11-12.

---

[4] Various statutes govern a sale at a pawn shop. *See, e.g.,* R.C. 4727.08 (keep state forms, record driver's license number of seller, allow police inspection of records); R.C. 4727.10 ("No person licensed as a pawnbroker shall receive any pledge or purchase any articles from any person who is known or believed by the licensee to be a thief or a receiver of stolen property."). If law enforcement informs the pawn shop of the identity of the true owner of stolen property that was purchased or pawned, then the pawn shop may restore the property to the owner directly; if the shop fails to restore the property, then the owner may sue to recover it from the pawn shop. R.C. 4727.12. *See also Ace Diamond & Jewelry Brokers Inc. v. Sweeney*, 7th Dist. No. 14 MA 62, 2014-Ohio-5226, 24 N.E.3d 1187, ¶ 22, citing *Gessner v. Gregg's Pawn Shop Inc.*, 181 Ohio App.3d 217, 2009-Ohio-713, 908 N.E.2d 948 (5th Dist.) (the theft victim can recover from the pawn shop money he paid to receive his property from the pawn shop).

**{¶34}** The Supreme Court rejected this remand and upheld both sentences. In stating there was no plain error to be recognized, the Court observed: "It is entirely reasonable for a court to infer in this case that Rogers received or retained the stolen truck and then removed the tires and rims in order to dispose of them, thereby committing separate and distinct acts resulting in two separate and distinct counts of RSP, one for receiving or retaining the truck and the other for disposing of the tires and rims." *Id.* at ¶ 26.

**{¶35}** The fact-pattern in our case involves acts that are just as separate and distinct as the ones the *Rogers* Court said would allow for multiple punishments. Furthermore, various appellate courts have concluded that a theft of property by a defendant followed by a sale of the same property can support separate sentences for theft and receiving property.

**{¶36}** In *Skapik*, the defendant stole firearms from a vehicle and sold them the next day. The Second District said the crimes of grand theft (of firearms) and receiving stolen property were not allied offenses of similar import subject to merger, noting the acts of stealing the guns and selling the guns occurred at different times and different locations. *State v. Skapik*, 2015-Ohio-4404, 42 N.E.3d 790 (2d Dist.), citing *State v. Green*, 11th Dist. Lake No. 2011-L-037, 2012-Ohio-2355, ¶ 68. In the cited *Green* case, the Eleventh District held the conduct of receiving stolen property during a theft is distinct from the conduct of selling property at a different time and place after the theft and refused to order merger. *Green*, 11th Dist. No. 2011-L-037 at ¶ 68 (and alternatively found a separate animus for each offense).

**{¶37}** In *Mitchell*, the defendant stole items and sold them to a pawn shop later that day. The defendant did not raise merger to the trial court, but argued plain error on appeal. The Eighth District first noted a defendant who commits theft is generally in receipt of the property and knows it is stolen, thereby constituting the offense of receiving stolen property with an identical animus during a single transaction. *See State v. Mitchell*, 8th Dist. Cuyahoga No. 101542, 2015-Ohio-1146, ¶ 24. However, the situation is not the same where "the record indicates that there were two separate transactions, or different conduct, during which the offenses were committed separately and with a separate animus." *Id.* at ¶ 25. Specifically, the theft was a distinct act and a separate transaction which occurred at a different time and place than the disposal of the stolen items. *Id.* at

¶ 26 (and alternatively finding a separate animus for each as the defendant's intention in depriving the victim of the property was separate from his intention in selling the property).

**{¶38}** In conclusion, the same facts were not used to convict Appellant of both offenses, and each offense relied on different episodes of conduct. The theft was committed after Appellant set up a meeting on Facebook posing as a buyer, met with the seller, snatched the ring from the seller, and fled in a waiting vehicle. Appellant was not charged with receiving stolen property merely because he committed the theft and thereby received or retained the property he stole. The receiving stolen property offense was the result of distinct and active conduct occurring at a different time and place than the theft. It was based upon Appellant's conduct of selling the ring at a pawn shop as if it belonged to him the day after the theft. A separately identifiable harm is also implicated in the sale to the pawn shop. Appellant has not established the trial court committed plain error in failing to merge the theft and receiving stolen property under the facts in the record of this case.

**{¶39}** In accordance, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO: CONSECUTIVE SENTENCES</u>

**{¶40}** Appellant's second assignment of error alleges:

"IN THE ALTERNATIVE, IF DEFENDANT-APPELLANT['S] SENTENCING IN CASE NO. 18 CR 00423B DOES NOT VIOLATE R.C. 2941.25, THE TRIAL COURT'S SENTENCING OF DEFENDANT-APPELLANT COREY GREEN TO CONSECUTIVE TWELVE-MONTH SENTENCES IN CASE NO. 18 CR 00423B IS CONTRARY TO LAW."

**{¶41}** In order to impose consecutive sentences, the sentencing court must find "that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" and also make one of the following findings:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶42}** The appellate court can reverse a sentence if it clearly and convincingly finds: "(a) That the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * *; [or] (b) That the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b). "The appellate court's standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2).

**{¶43}** The sentencing court is required to make the required findings at the sentencing hearing and in the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. "[A] word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis *and can determine that the record contains evidence to support the findings*, consecutive sentences should be upheld." (Emphasis added.) *Id.* However, a court is not required to give reasons supporting the consecutive sentence findings. *Id.* at ¶ 27.

**{¶44}** At the sentencing hearing, the court made the initial and mandatory consecutive sentence findings from R.C. 2929.14(C)(4), stating consecutive sentences were necessary to protect the public from future crime and punish Appellant for these offenses and were not disproportionate to the seriousness of his conduct and the danger posed to the public. (2/6/20 Sent.Tr. 22). The court restated these findings in the February 18, 2020 sentencing entry.

**{¶45}** Appellant says the imposition of consecutive sentences for theft and receiving stolen property is contrary to law because there was no evidence to support the final finding under one of the three subdivisions of R.C. 2929.14(C)(4). The court found both subdivision (a) and (c) applied.

**{¶46}** As to subdivision (a), the court said at the sentencing hearing that Appellant "committed one or more of the multiple offenses while he was under bench warrant status, either out on bond or under some sort of sanction from a court. He failed to honor it."

Case No. 20 MA 0084

(2/6/20 Sent.Tr. 22-23). The judgment entry cited subdivision (a) of R.C. 2929.14(C)(4) and found "the offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense."

**{¶47}** Appellant claims there was no evidence in the record that on the day he committed the offenses in 18 CR 423B (March 26 and March 27, 2018), he was awaiting trial or sentencing, under a sanction under the cited statutes, or under post-release control. He was not charged with the passing bad checks offense in 18 CR 458 until April 11, 2018, when a complaint was filed in municipal court (and the indictment said the offense occurred on March 28, 2018).

**{¶48}** The court mentioned Appellant's release on bond pending sentencing, and although a condition of bond was not to leave the state without permission, the record at the sentencing hearing shows that he left the state and was apprehended on an outstanding warrant in New York. Appellant's argument suggests there is nothing in the record showing that his arrest on these warrants in the Fall of 2018 necessarily meant that on March 27, 2018, he "was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense" which are the requirements in order to make the consecutive sentence finding in R.C. 2929.14(C)(4)(a).

**{¶49}** However, there were other charges relevant to these findings. The record shows Appellant was held without bond after discussions at a status hearing on May 24, 2018. (5/31/18 J.E.). At the subsequent plea hearing, it was noted Appellant was previously held without bond as a result of a Pennsylvania warrant and extradition claim. (7/30/18 Plea Tr. 16-17). The court's July 30, 2018 judgment entry cited the Pennsylvania case number, which suggested it was a 2017 case.

**{¶50}** At the sentencing hearing and in the sentencing entry, the trial court said it reviewed the presentence investigation report (PSI). The court read from the PSI at the sentencing hearing, pointing to pending charges in Erie, Pennsylvania. (2/6/20 Sent.Tr. 20-21). The PSI is part of the record to be reviewed in the appeal. R.C. 2953.08(F)(1). The PSI was prepared in August 2018 for the original sentencing hearing. It does not mention a New York warrant or pending charges in that state.

**{¶51}** However, the PSI shows the Pennsylvania case was filed on December 13, 2017, charging Appellant with one count of theft and one count of "receiving." The PSI reveals these 2017 charges had not yet proceeded to disposition and were still pending at the time of the August 2018 PSI and thus were still pending when Appellant committed the theft and the receiving stolen property offenses in the case at bar in March 2018. Consequently, Appellant's argument that the record does not support the consecutive sentence finding in R.C. 2929.14(C)(4)(a) is without merit.

**{¶52}** Furthermore and alternatively, the trial court made an alternative finding under R.C. 2929.14(C)(4)(c). The court found Appellant's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by this offender." (2/6/20 Sent.Tr. 23). The judgment entry repeated this finding, citing subdivision (c) of R.C. 2929.14(C)(4).

**{¶53}** Appellant claims there is "no evidence provided by the Court" that supported this finding under subdivision (c). (Apt.Br. 8). As aforementioned, the sentencing court is not required to give reasons to support its consecutive sentence findings. *Bonnell*, 140 Ohio St.3d 209 at ¶ 27. Even so, the trial court read from the PSI at the sentencing hearing. The court noted there were pending charges in Pennsylvania. The court recited Appellant's criminal history, beginning with a grand larceny conviction 1993 and progressing through convictions in 1994, 1998, 1999 (2), 2007, 2011 (2), 2012, 2013, 2014, 2015 (4), and 2016. (2/6/20 Sent.Tr. 20).[5]

**{¶54}** We cannot clearly and convincingly find that the record does not support the sentencing court's finding under R.C. 2929.14(C)(4)(c). Appellant's arguments are without merit, and this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR THREE: R.C. 2929.12 FINDINGS</u>

**{¶55}** Appellant's third and final assignment of error contends:

"THE TRIAL COURT'S SENTENCING OF DEFENDANT-APPELLANT COREY GREEN TO 12 MONTHS PRISON IN CASE NO. 18 CR 00458 IS CONTRARY TO LAW."

**{¶56}** The twelve-month sentence for passing bad checks imposed in 18 CR 458 was a maximum sentence for this fifth-degree felony. *See* R.C. 2929.14(A)(5). Appellant

---

[5] After his initial arrest in the case at bar, Appellant had little free time to commit new charges as: he was incarcerated from his arrest in the current cases from May 2018 through July 2018; after his September 25, 2018 sentencing hearing (which was continued), he left the state of Ohio in violation of his bond and was apprehended in New York on warrants; and he served a prison sentence in New York before being transported back to Ohio for the February 6, 2020 sentencing hearing.

<u>Case No. 20 MA 0084</u>

initially says the twelve-month sentence constituted an abuse of discretion, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. However, the two-step process set forth by the plurality in *Kalish* (providing a second-tier abuse of discretion review) is no longer available. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 7, 10, 14-16, 22. "The appellate court's standard for review is not whether the sentencing court abused its discretion." *Id.* at ¶ 9-10, quoting R.C. 2953.08(G)(2) (which also provides the sentence cannot be reversed unless the reviewing court clearly and convincingly finds (a) the record does not support the findings under specifically-cited statutes or (b) the sentence is otherwise contrary to law).

{¶57} In addition, the Supreme Court has recently clarified that a reviewing court cannot use division (G)(2)(a) of R.C. 2953.08 to review whether the record supports R.C. 2929.11 or R.C. 2929.12 findings. *State v. Jones*, __ Ohio St.3d __, 2020-Ohio-6729, __ N.E.3d __, ¶ 28 (finding a statement to the contrary in *Marcum* was dicta). The *Jones* Court also concluded R.C. 2953.08(G) does not allow an appellate court to review whether the record supports the sentence as a whole under R.C. 2929.11 and R.C. 2929.12 as this would allow the appellate court to substitute its judgment for the trial court on the selection of a sentence. *Id.* at ¶ 30-32, 38-39, 41-42. The Court opined the statutory language "otherwise contrary to law" meant something other than an appellate court finding "the record does not support the sentence." *Id.* at ¶ 38.

{¶58} In contending the maximum sentence of twelve months for his passing bad checks conviction was contrary to law, Appellant claims the trial court failed to consider the seriousness and recidivism factors as required by R.C. 2929.12. He recognizes the sentencing entry declared the court "balanced the seriousness and recidivism factors under O.R.C. 2929.12" and considered the purposes and principles of sentencing under R.C. 2929.11. The court did not mention the factors at the second continued sentencing hearing, after noting it would like to impose consecutive sentences but would refrain from doing so.

{¶59} As recently reaffirmed by the Supreme Court in *Jones*, "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *Jones*, __ Ohio St.3d __, 2020-Ohio-6729 at ¶ 20, citing *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31 and *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). Appellant acknowledges this law and our prior case law stating: Where the record is silent, we employ a rebuttable presumption that the

Case No. 20 MA 0084

sentencing court considered the purposes and principles of sentencing and the seriousness and recidivism factors, unless the record affirmatively shows otherwise or the sentence is strikingly inconsistent with the factors. *State v. Hudson*, 2017-Ohio-645, 85 N.E.3d 371, ¶ 34, 36 (7th Dist.). *See also State v. James*, 7th Dist. Columbiana No. 07CO47, 2009-Ohio-4392, ¶ 38–51 (explaining the history of this principle in detail), applying *State v. Adams*, 37 Ohio St.3d 295, 297, 525 N.E.2d 1361 (1988) (rejecting the argument that a silent record raises a presumption that the trial court did not consider R.C. 2929.12).

**{¶60}** Appellant states it would be "unwise" to assume the trial court considered all factors in R.C. 2929.12 merely because the court said it did in the entry. He suggests the mentioning of certain facts in the sentencing entry indicates the court did not consider anything except those facts. For instance, the court said it considered that Appellant violated the terms of his bond by leaving the state without the court's permission pending sentencing, failed to appear at his October 31, 2018 sentencing hearing, and was wanted on a bench warrant since that time.

**{¶61}** Pointing out this background in the sentencing entry does not mean the court failed to consider the statutory factors in R.C. 2929.12. The court specifically said it considered those factors, and this background was essentially announced as an additional factor. *See* R.C. 2929.12 ("any other relevant factor").

**{¶62}** Notably, the trial court also said it considered the PSI. The same PSI reviewed in the prior assignment of error was generated for use in both cases. As aforementioned, the PSI contained information about Appellant's criminal history and juvenile adjudication history, which are recidivism factors. *See* R.C. 2929.12 (D)(2), (E)(2). The PSI showed he did not lead a law-abiding life for a significant number of years prior to committing the offense and did not respond favorably to prior sanctions. *See* R.C. 2929.12(D)(3),(E)(3). From the history and the facts of the case in the record, there was no indication the offense was committed under circumstances not likely to recur. *See* R.C. 2929.12(E)(4).

**{¶63}** In summary: the trial court need not specify findings on R.C. 2929.12 at sentencing; the record does not affirmatively show the court failed to consider R.C. 2929.12; and Appellant has not demonstrated the sentence was strikingly inconsistent with the factors in order to rebut the presumption that the court considered R.C. 2929.12.

We cannot clearly and convincingly find the sentence is contrary to law on the basis raised herein.

**{¶64}** Regardless, Appellant's sentencing argument in this assignment of error is moot. As Appellant recognizes, his twelve-month sentence in 18 CR 458 (passing bad checks) was imposed concurrent to the sentences in 18 CR 423B (theft and receiving stolen property). (Apt.Br. 2). His jail time credit in 18 CR 458 was 145 days, as calculated at the time of his February 14, 2020 sentencing hearing. (2/18/20 J.E.). Appellant's December 8, 2020 brief points out that he already served over a year on these cases. (Apt.Br. at 6).

**{¶65}** Due to Appellant's aforementioned delay in filing the notice of appeal, he completed his sentence before the brief was filed by his new attorney. Accordingly, the challenge to the sentence in 18 CR 458 is moot. *See State v. Merritt*, 7th Dist. Jefferson No. 09 JE 26, 2011-Ohio-1468, ¶ 50 ("Because this assignment of error deals only with the length of his sentence, and he has served his prison term in full, the issue is moot and the assignment of error overruled"); *State v. Verdream,* 7th Dist. Mahoning No. 02CA222, 2003-Ohio-7284, ¶ 13 (a challenge to the correctness of a felony sentence where the defendant already served that sentence is moot). Based on the various reasons expressed above, this assignment of error is overruled.

**{¶66}** For the foregoing reasons, the trial court's judgments in 18 CR 423B and 18 CR 458 are affirmed.


Donofrio, P J., concurs.

Waite, J., concurs.

[Cite as *State v. Green*, 2021-Ohio-2412.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## **NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**