[Cite as *State v. Watson*, 2023-Ohio-1469.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| MICHAEL WATSON | : | Case No. 22-COA-027 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:            Appeal from the Court of Common Pleas,
                                    Case No. 19-CRI-194


JUDGMENT:                           Affirmed


DATE OF JUDGMENT:                   May 3, 2023


APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

CHRISTOPHER R. TUNNELL                          TIMOTHY HACKETT
NADINE HAUPTMAN                                 250 East Broad Street
110 Cottage Street                              Suite 1400
Third Floor                                     Columbus, OH  43215
Ashland, OH  44805

*King, J.*

{¶ 1}   Defendant-Appellant Michael Watson appeals the July 7, 2022 resentencing judgment entry of the Ashland County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

### Facts and Procedural History

{¶ 2}   A recitation of the underlying facts of the offenses is unnecessary to our resolution of this appeal.

{¶ 3}   In 2019, the Ashland County Grand Jury returned an indictment charging Watson with two counts of aggravated murder, four counts of conspiracy to commit aggravated murder, two counts of attempted aggravated murder, aggravated burglary, and aggravated robbery, all with accompanying firearm specifications. Watson was 17-years old when he committed the crimes.

{¶ 4}   On January 24, 2020, pursuant to a plea agreement with the state, Watson agreed to provide testimony against his co-defendants and plead guilty to all charges. The parties agreed merger would apply to specific counts and the state elected to have Watson sentenced for one count of aggravated murder, one count of conspiracy to aggravated murder, and aggravated robbery. The parties further agreed the specifications merged and the state elected to have Watson sentenced on the specification accompanying aggravated murder. The parties jointly agreed to a sentencing recommendation of life in prison with parole eligibility after 30 years for aggravated murder, with a three-year term of incarceration for the accompanying firearm specification; five to seven and one-half years in prison for conspiracy to aggravated murder; and five to seven and one-half years in prison for aggravated robbery, to be served consecutively for an aggregate prison term of thirty-eight years to life in prison.

{¶ 5}   The trial court convicted Watson upon his pleas of guilty and sentenced him in accordance with the agreed upon sentence.

{¶ 6}   Watson filed an appeal from his sentence and conviction arguing his sentence of thirty-eight years to life in prison was unconstitutional based on the December 22, 2020 decision of the Ohio Supreme Court in *State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952. *State v. Watson*, 5th Dist. Ashland No. 19-CRI-194, 2021-Ohio-1361, ¶ 8 (*Watson I*). *Patrick* held that the trial court must expressly consider the juvenile offender's age as a mitigating factor when imposing a term of life imprisonment, even if the term includes eligibility for parole. *Id.* at ¶ 2. Because the record in *Watson I* was devoid of any articulation of consideration of Watson's youth by the trial court before imposing sentence, this court agreed that Watson's sentence was unconstitutional. Id. ¶ 10. We reversed Watson's sentence and remanded the matter for resentencing. Id. ¶ 14.

{¶ 7}   On June 27, 2022, the trial court held a new sentencing hearing. Watson presented mitigation evidence as to youth through the testimony and written report of Dr. Sandra B. McPherson.

{¶ 8}   Dr. McPherson's testimony and report indicated Watson was segregated from the general population at the time of McPherson's evaluation due to his involvement in an attack on another inmate. Report (R.) at 2. As to family dynamics, Dr. McPherson reported while Watson's father went to prison for three years when Watson was eight-years-old, Watson nonetheless came from an intact home and has a close relationship with his parents. *Id.* 2-5. Even so, Watson's family environment consisted of adults making bad choices and modeling antisocial behavior. Transcript of sentencing hearing (T.) 23. While Watson's father was in prison, his

mother had to work nights leaving Watson to his own devices. T. 20-21. Watson told Dr. McPherson he had a "very bad" experience in his first 5 years, but declined to elaborate. T. 21.

{¶ 9} Despite average-to-above-average intelligence in some areas, Watson has struggled socially and academically. He lacks sharing, collaborative, "getting along" behaviors, and he is reactive. He has been involved in fights from the time he was in first grade. T. 23, R. 6-7.

{¶ 10} Dr. McPherson explained how the adolescent brain differs from the adult brain, specifically that phycological aspects do not fully mature until the mid-20's making youth more impulsive. T. 15-16. While Dr. McPherson found Watson has a history of being anxious, depressed, and displays some antisocial traits, she did not diagnose him with any severe mental illness. T. 29-30. She found Watson dependent on nicotine, marijuana, and involved in using methamphetamine both during the days leading up to his crimes and since he has been incarcerated. T. 32-37, 42. She believed peer pressure played a role in the commission of Watson's crimes and further believed he could be rehabilitated. T. 30.

{¶ 11} For its part, the state presented state's exhibit A, a copy of Watson's institutional report which reflected 27 violations including violations involving violence and controlled substances.

{¶ 12} The parties did not engage in sentencing negotiations as they had before the first sentencing hearing. Counsel for Watson, however, advocated for a sentence with earlier parole eligibility than the originally imposed sentence. The state recommended the original 38 years to life sentence be reimposed.

{¶ 13} Following a discussion of *State v. Patrick*, and case law and statutory amendments which came about after Watson's first sentencing hearing, the trial court resentenced Watson to

life incarceration for aggravated murder with parole eligibility after 30 years. For conspiracy to aggravated murder, the trial court imposed an indefinite sentence of five to seven-and-a-half years. For aggravated robbery Watson was also sentenced to five to seven-and-a-half years. He was further sentenced to a mandatory three-year term of incarceration for the firearm specification. The trial court ordered Watson to serve the sentences for conspiracy to aggravated murder, aggravated robbery, and the firearm specification consecutively to the sentence for aggravated murder resulting in an aggregate sentence of 43 years to life in prison. Five years longer than the original sentence.

{¶ 14} Watson filed an appeal and the matter is now before this court for review. He raises four assignment of error as follow:

I

{¶ 15} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DISREGARDED THIS COURT'S SPECIFIC MANDATE ON REMAND AND INSTEAD DECIDED THAT IT WAS NO LONGER BOUND BY THIS COURT'S PRIOR DECISION OR BY *STATE V. PATRICK* VIOLATING THE LAW-OF-THE-CASE DOCTRINE AND MICHAEL'S FUNDAMENTAL RIGHTS UNDER THE OHIO CONSTITUTION. ARTICLE I, SECTIONS 9, 10, 16, OHIO CONSTITUTION."

II

{¶ 16} "THE TRIAL COURT IMPOSED AN INCREASED AGGREGATE LIFE SENTENCE FIVE YEARS LONGER THAN THAT ORIGINALLY IMPOSED OR RECOMMENDED BY EITHER PARTY. THE NEW SENTENCE IS AT A MINIMUM PRESUMPTIVELY VINDICTIVE, AND THE RECORD NEITHER OVERCOMES THAT PRESUMPTION NOR JUSTIFIES THE INCREASED SENTENCE, VIOLATING MICHAEL'S

DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

III

{¶ 17} "THE TRIAL COURT'S DECISION TO IMPOSE HEIGHTENED CONSECUTIVE SENTENCES, FOR AN AGGREGATE LIFE-TERM FIVE YEARS LONGER THAN THAT ORIGINALLY IMPOSED, FIVE YEARS BEYOND THAT RECOMMENDED BY EITHER PARTY, AND EIGHTEEN YEARS LONGER THAN MICHAEL'S STATUTORY PAROLE-ELIGIBILITY DATE, WAS NOT CLEARLY AND CONVINCINGLY SUPPORTED BY THE RECORD. R.C. 2953.08(G); 2929.14(C)(4); 2967.132(B)-(C)."

IV

{¶ 18} "THE TRIAL COURT ERRED WHEN IT IMPOSED INDEFINITE SENTENCES UNDER THE UNCONSTITUTIONAL REAGAN TOKES LAW, FIFTH, SIXTY, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; ARTICLE I, SECTIONS 5, 10, AND 16 OF THE OHIO CONSTITUTION."

I

{¶ 19} In his first assignment of error, Watson argues the trial court violated law of the case doctrine when it declined to articulate its consideration of Watson's youth as a mitigating factor before imposing its sentence. We disagree.

{¶ 20} Law of the case doctrine provides that a decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *U.S. Bank v. Detweiler*, 5th Dist. Stark No. 2011 CA00095, 2012-Ohio-73, ¶ 26, citing *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 462 N.E.2d 410 (1984). "After a reviewing court has reversed and remanded a cause for further action in the trial

court, and the unsuccessful party does not prosecute review to the Supreme Court, the pronouncement of the law by the intermediate court becomes the law of the case, and must be followed by the lower court in subsequent proceedings in that case." *Pavlides v. Niles Gun Show, Inc.*, 112 Ohio App.3d 609, 615, 679 N.E.2d 728 (1996).

{¶ 21} Here Watson argues the trial court refused to follow this court's remand instructions to resentence him pursuant to *State v. Patrick,* 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952. As an initial matter, authority relevant to Watson's sentencing complaint has evolved since his first sentencing hearing. First, on December 23, 2022, the Supreme Court of Ohio issued an opinion addressing the impact of *Jones v. Mississippi*, __ U.S. __, 141 S.Ct. 1307, 209 L.Ed. 2d.320 (2021) on its decision in *State v. Patrick*. It did so in a sentencing challenge identical to the one Watson has raised, and in the case of Watson's codefendant Tyler Morris. The Court found:

> Although the United States Supreme Court in *Jones*, — U.S. ——, 141 S.Ct. 1307, 209 L.Ed.2d 390, held that sentencing courts are not required to make a finding of permanent incorrigibility before sentencing a youthful offender to life in prison, that holding does not extend to negate our decision in *Patrick* that sentencing courts must separately consider an offender's youth as a mitigating factor before sentencing him or her to prison for life. Furthermore, the court in *Jones* noted that states are free to require sentencing courts to make certain findings and/or require sentencing courts to set forth certain information on the record. *Id.* at 1323. That is what this court did in

*Patrick.* Unless or until the General Assembly chooses to legislate

otherwise, *Patrick* is still the law in Ohio.

{¶ 22} *State v, Morris*, -- N.E.3d --, 2022-Ohio-4609, ¶ 16. The matter was remanded to the trial court with the directive to "resentence him after considering his youth as a mitigating factor." *Id.* ¶ 17.

{¶ 23} Second, on January 20, 2023, in *State v. Spears*, 5th Dist. Fairfield No. 2021 CA 00030, 2023-Ohio-187 this court considered the application of R.C. 2929.19(B)(1)(b), which became effective April 12, 2021. Said section essentially codified *Patrick* and directs a trial court in relevant part as follows:

> (b) If the offense was committed when the offender was under
>
> eighteen years of age, in addition to other factors considered,
>
> consider youth and its characteristics as mitigating factors, including:
>
> (i) The chronological age of the offender at the time of the offense
>
> and that age's hallmark features, including intellectual capacity,
>
> immaturity, impetuosity, and a failure to appreciate risks and
>
> consequences;
>
> (ii) The family and home environment of the offender at the time of
>
> the offense, the offender's inability to control the offender's
>
> surroundings, a history of trauma regarding the offender, and the
>
> offender's school and special education history;

(iii) The circumstances of the offense, including the extent of the offender's participation in the conduct and the way familial and peer pressures may have impacted the offender's conduct;

(iv) Whether the offender might have been charged and convicted of a lesser offense if not for the incompetencies associated with youth, such as the offender's inability to deal with police officers and prosecutors during the offender's interrogation or possible plea agreement or the offender's inability to assist the offender's own attorney;

(v) Examples of the offender's rehabilitation, including any subsequent growth or increase in maturity during confinement.

{¶ 24} In *Spears*, due to the lack of precedent regarding what appropriate consideration of the above outlined factors looks like, we likened the analysis to that of the sentencing considerations contained R.C. 2929.11 and 2929.12 which require only that the trial court consider both R.C. 2929.11 and 2929.12 before imposing a prison sentence, and with no requirement to make specific findings under any of those considerations. *Spears* at ¶ 38 citing *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31; *State v. Arnett*, 88 Ohio St.3d 208, 724 N.E.2d 793 (2000). Even so, we noted:

While precedent does not require the trial court to produce findings, our holdings with regard to R.C. 2929.11 and R.C. 2929.12 require that the "necessary findings can be found in the record," *State v.*

*Taylor*, 5th Dist. Richland No. 17CA29, 2017-Ohio-8996, 2017 WL 6371306, ¶ 27, *State v. Webb*, 5th Dist. Muskingum No. CT2018-0069, 2019-Ohio-4195, 2019 WL 5092631, ¶ 19 or that "the record reflect[ ] that the trial court considered the purposes and principles of sentencing and the seriousness and recidivism factors as required in Sections 2929.11 and 2929.12 of the Ohio Revised Code." *State v. Hayes*, 5th Dist. Knox No. 18CA10, 2019-Ohio-1629, 2019 WL 1938718, ¶ 55. See *State v. Green*, 7th Dist., 2021-Ohio-2412, 173 N.E.3d 876, ¶ 63 and *State v. Hughes*, 6th Dist. Wood No. WD-05-024, 2005-Ohio-6405, 2005 WL 3254572, ¶ 10. The mandate of R.C. 2929.19, that the trial court consider specific factors, is sufficiently similar to the language of R.C. 2929.11 and R.C. 2929.12 to warrant to the same analysis. Consequently, while the trial court need not specify findings regarding the factors listed in R.C. 2929.19(B)(1)(b), we must review the record to determine whether it affirmatively shows the court failed to consider those factors.

{¶ 25} *Spears* at ¶ 40.

{¶ 26} Against that background, Watson supports his argument that the trial court failed to comply with this court's directive on remand with quotes from the trial court indicating its disagreement with this court and its opinion that *Patrick* was no longer good law. T. 6-7, 18, 59. While inappropriate, despite its bluster the trial court's comments are inconsequential because

the record reflects it ultimately did comply with this court's directive to consider Watson's youth before imposing a sentence which included a potential term of life imprisonment.

{¶ 27} The trial court first listened to the lengthy testimony of Dr. McPherson who discussed the following: immaturity and impetuosity inherent to youth including Watson; Watson's less than ideal home environment and family dynamics; that peer pressure may have contributed to Watson's conduct; and that while he may have anxiety and depression challenges, he does not suffer serious mental illness. Dr. McPherson's opinions were also contained in her report which Watson provided to the trial court and the trial court reviewed. The state submitted Watson's institutional report which reflected 27 infractions including violations involving violence and controlled substances. In fashioning a sentence, the trial court specifically noted it had considered the purposes and principals of sentencing including the five additional youth factors set forth in R.C. 2929.19(B)(1)(b) as well as Dr. McPherson's report. The trial court also noted it had sat through the trial of Watson's codefendant and heard how the murder and attempted murder were planned, observed that Watson's testimony suggested he "enjoyed seeing the reaction of the victims" and that he "rather enjoyed the situation." The court also mentioned Watson's institution report and the fact that his behavior in the institution "sounds eerily like the situation that led to the offenses in this case." T. 92-101.

{¶ 28} We find, therefore, that despite its apparent distaste for this court's decision to overrule the first sentence and then remand, the record reflects the trial court adequately complied with this court's directive to articulate consideration of Watson's youth before imposing a sentence which included a potential term of incarceration for life.

{¶ 29} The first assignment of error is overruled.

II

{¶ 30} In his second assignment of error, Watson argues the sentence imposed by the trial court on remand was an impermissible vindictive sentence imposed to punish him for his successful appeal. We disagree.

{¶ 31} We have previously addressed an allegation of vindictive sentencing in *State v. Moore,* 5th Dist. Knox No. 07-CA-19, 2007-Ohio-6826. In that matter we reviewed *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and its progeny. In *Pearce,* the United States Supreme Court set aside the sentence of a state prisoner who had successfully appealed his conviction but upon remand was given a harsher sentence. The Court stated that a defendant's due process rights were violated when, after a successful appeal, a harsher sentence was imposed because of vindictiveness. The Court went on to hold that, if a more severe sentence is imposed following appeal, the reasons for the harsher sentence must appear on the record and must be "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726*.*

{¶ 32} While *Pearce* does not prohibit a trial court from imposing a longer sentence on remand, it does require the court to give reasons for the increased sentence in order to overcome a presumption of vindictiveness including conduct or events which cast " ' new light upon the defendant's life, health, habits, conduct, and mental and moral propensities.' " *Wasman v. United States*, 468 U.S. 559, 570–571, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) citing *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949).

{¶ 33} "In Ohio, it has generally been held that 'a presumption of vindictiveness arises when the same judge imposes a harsher sentence following a successful appeal.' " *State v. Ferrell*, 2021-Ohio-1259, 170 N.E.3d 464, ¶ 17 (11th Dist.). Here, the resentencing was

performed by the same judge as the original sentencing. Watson received an objectively harsher sentence since his prison term was lengthened by five years. The issue before us then is whether the presumption of vindictiveness arising from the harsher sentence is rebutted by the record. In order to overcome the presumption of vindictiveness, the trial court must make affirmative findings on the record regarding conduct or events that occurred or were discovered after the original sentencing. *State v. Thrasher*, 178 Ohio App.3d 587, 2008-Ohio-5182, 899 N.E.2d 193, ¶ 17 (2nd Dist.), citing *Pearce* and *Wasman*.

{¶ 34} In support of his argument that the presumption was not rebutted, Watson again points to the same comments made by the trial court during sentencing that he relied upon in the first assignment of error. The trial court indicated this court and "perhaps the Ohio Supreme Court were just flat out wrong." T. 59. It referenced a case that appeared to be have been reversed by this court on a community control issue but also appeared unrelated to this case, generally suggesting opinions from this court are baffling. T. 61-62 It further suggested the parties could "knock yourselves out" on appeal, a "waste of the taxpayer's money," and that "infinite" appeals did not matter to the trial court because "I won't be here the next time this issue comes before this court." T. 19, 67-68.

{¶ 35} We agree that the commentary from trial judge (who is now retired) was wholly inappropriate. The trial judge should have refrained from the all improper commentary, which was heard by the defendant, attorneys, and the public present. The public needs to have the utmost confidence that the trial judge will follow the law without bias or passion. And improper commentary such as this could undermine the public's confidence in a judge's ability to apply the law fairly. So although we find that the trial judge applied the mandate from this court

properly, the judge should have done so without being combative towards this court and interjecting his personal opinion into the hearing.

{¶ 36} Thus we find the judge's personal commentary was unrelated to the new sentence. Moreover, the trial court was presented with new information which cast new light on Watson's conduct, mental and moral propensities. As discussed under the first assignment of error, the trial court sat through the trial of Watson's codefendant, heard how the murder and attempted murder were planned and carried out, and the trial court observed during the resentencing that Watson's testimony suggested he "enjoyed seeing the reaction of the victims" and "rather enjoyed the situation." For that reason, the trial court "somewhat beg[ged] to differ" with Dr. McPherson's conclusion that a diagnosis of psychopathy did not apply to Watson. It also noted:

> [Y]our accomplice in this matter, Tyler Morris, whose name was mentioned during this hearing, received a sentence of similar nature * * *as what you were originally sentenced to in this matter. It might have been a little different on the parole eligibility, but he wasn't the trigger man, you were. You were the one that engaged in the actual act which puts your responsibility a little higher up the totem than Mr. Morris.

{¶ 37} T. 100. The court was also presented with new information contained in Dr. McPherson's report and testimony.[1] Finally, the trial court was provided with new information in

---

[1] For reasons unclear in the record, Watson had previously waived preparation of a presentence investigation prior to his pleas. Thus Dr. McPherson's report and information gleaned from Morris' trial were entirely new

the form of Watson's unfavorable institution report which contained offenses it found "eerily" similar to Watson's crimes.

{¶ 38} All of these things occurred or were discovered after Watson's original sentencing hearing. Moreover, the trial court made it clear the harsher sentence was based on its observations during trial, the fact that Watson was the "trigger man," and Watson's misconduct in prison. We find these statements by the trial court sufficient to overcome the presumption of vindictiveness.

{¶ 39} The second assignment of error is overruled.

III

{¶ 40} Watson next appears to argue his consecutive sentences are not supported by the record and the imposition of consecutive sentences interferes with the function of the Adult Parole Authority. We disagree.

{¶ 41} R.C. 2929.14(C)(4) states:

> (4) If multiple prison terms are imposed on an offender for convictions
> of multiple offenses, the court may require the offender to serve the
> prison terms consecutively if the court finds that the consecutive
> service is necessary to protect the public from future crime or to
> punish the offender and that consecutive sentences are not
> disproportionate to the seriousness of the offender's conduct and to

information. We note the judgment entry appealed from indicates a presentence investigation was prepared which is apparently inaccurate.

the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 42} R.C. 2953.08(G)(2) requires this court to review the record de novo and decide whether the record clearly and convincingly does not support the consecutive-sentence findings. *State v, Gwynne*, --- NE.3d --- 2022-Ohio-4607 ¶ 1. When imposing consecutive sentences, a trial court must state the required findings at the sentencing hearing. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. Because a court speaks through its journal, the court should also incorporate its statutory findings into the sentencing entry. *Id.* However, a

word-for-word recitation of the language of the statute is not required. *Id.* As long as the reviewing court can discern the trial court engaged in the correct analysis and can determine the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.*

{¶ 43} Watson does not dispute that the trial court recited the appropriate statutory findings on the record and in its sentencing judgment entry pursuant to R.C. 2929.14(C)(4) before imposing consecutive sentences. Instead, he asks we find the record does not support the imposition of consecutive sentences, and conflicts with R.C. 2967.132(C).

{¶ 44} R.C. 2967.132(C) became effective on April 12, 2021. That section provides:

> (C) Notwithstanding any provision of the Revised Code to the contrary, and regardless of when the offense or offenses were committed and when the sentence was imposed, a prisoner who is serving a prison sentence for an offense other than an aggravated homicide offense and who was under eighteen years of age at the time of the offense, or who is serving consecutive prison sentences for multiple offenses none of which is an aggravated homicide offense and who was under eighteen years of age at the time of the offenses, is eligible for parole as follows:
>
> (1) Except as provided in division (C)(2) or (3) of this section, the prisoner is eligible for parole after serving eighteen years in prison.
>
> (2) Except as provided in division (C)(3) or (4) of this section, if the prisoner is serving a sentence for one or more homicide offenses, none of which are an aggravated homicide offense, the prisoner is eligible for parole after serving twenty-five years in prison.

(3) Except as provided in division (C)(4) of this section, if the prisoner is serving a sentence for two or more homicide offenses, none of which are an aggravated homicide offense, and the offender was the principal offender in two or more of those offenses, the prisoner is eligible for parole after serving thirty years in prison.

(4) If the prisoner is serving a sentence for one or more offenses and the sentence permits parole earlier than the parole eligibility date specified in division (C)(1), (2), or (3) of this section, the prisoner is eligible for parole after serving the period of time in prison that is specified in the sentence.

{¶ 45} An "aggravated homicide offense" is defined in R.C. 2967.132(A)(1) as:

(1) "Aggravated homicide offense" means any of the following that involved the purposeful killing of three or more persons, when the offender is the principal offender in each offense:

(a) Aggravated murder;

(b) Any other offense or combination of offenses that involved the purposeful killing of three or more persons.

{¶ 46} Further relevant, the section states:

(2) "Homicide offense" means a violation of section 2903.02, 2903.03, 2903.04, or 2903.041 of the Revised Code or a violation of section 2903.01 of the Revised Code that is not an aggravated homicide offense.

(B) This section applies to any prisoner serving a prison sentence for one or more offenses committed when the prisoner was under eighteen years of age. Regardless of whether the prisoner's stated prison term includes mandatory time, this section shall apply automatically and cannot be limited by the sentencing court.

{¶ 47} Watson's aggravated murder conviction was based on the killing of one victim making R.C. 2967.132(C)(2) applicable, making Watson eligible for parole after 25 years. Watson argues the trial court's decision to order consecutive sentences that result in a term of incarceration beyond his parole eligibility date does nothing to protect the public from future crime and thus creates an excessive sentence.

{¶ 48} First, Watson argues that whenever a youthful offender is subject to a life sentence a sentencing court should not set the term of the proceeding determinate sentence beyond the when the offender is eligible for parole under R.C. 2967(C). We disagree.

{¶ 49} We first note that R.C. 2929.02(B)(3) directs the trial court to impose a sentence of 30 years to life here because of Watson's age at the time of the offense of aggravated murder. Because Watson is serving a life sentence for aggravated murder, R.C. 2967.13(A)(1) would normally apply here and require Watson to serve 43 years before he would be eligible for parole.

But R.C. 2967.132 intervenes instead to allow the Adult Parole Authority to consider Watson for parole after he serves just 25 years of his 43-year sentence.

{¶ 50} If the import of R.C. 2967.132 is as Watson suggests, then a sentencing court would not be permitted impose the 30-year-to-life sentence required by R.C. 2929.02(B)(3), even before considering whether to run the sentences consecutively. This is not permissible as "judges are duty-bound to apply sentencing laws as they are written." *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089,3 5 N.E.3d 512 ¶ 10 citing *Woods v. Telb*, 89 Ohio St.3d 504, 507-509, 733 N.E.2d 1103 (2000). Likewise, sentencing courts should continue to impose the properly calculated sentence even in situations where consecutive sentences result in a determinate sentence in excess of the required time served for parole eligibility under R.C. 2967.132.

{¶ 51} Further, even if we were to determine that there was conflict among these provisions, we are required by R.C. 1.51 to give effect to both provisions whenever possible. Accordingly, the determinate sentence of 43 years was not improper.

{¶ 52} Second, as discussed above, the trial court placed extensive findings on the record concerning information it did not have at Watson's first sentencing hearing including what it learned during Morris' trial, Dr. McPherson's testimony and report, and Watson's institution report. The trial court's consideration of all of these factors lead us to a conclusion that the record clearly and convincingly supports the consecutive sentence findings.

{¶ 53} The third assignment of error is overruled.

IV

{¶ 54} In his final assignment of error, appellant challenges his indefinite sentences pursuant to the Reagan Tokes Act, codified in R.C. 2967.271.

{¶ 55} We rejected the same challenge in *State v. Householder*, 5th Dist. Muskingum No. CT2021-0026, 2022-Ohio-1542, ¶ 6:

> For the reasons stated in the dissenting opinion of The Honorable W. Scott Gwin in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, we find the Reagan Tokes Law does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in *Wolfe* as the opinion of this Court. In so holding, we also note the sentencing law has been found constitutional by the Second, Third, Sixth, and Twelfth Districts, and also by the Eighth District sitting en banc. See, e.g., *State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470. Further, we reject Appellant's claim the Reagan Tokes Act violates equal protection for the reasons stated in *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353.

{¶ 56} The final assignment of error is overruled.

{¶ 57} The judgment of the Ashland County Court of Common Pleas is affirmed.

By King, J.,

Gwin, P.J. and

Baldwin, J. concur.

AJK/rw